SENSITIVE CARE, INC., d/b/a HEB
Nursing Center, Appellant,

v.

TEXAS DEPARTMENT OF HUMAN
SERVICES, Appellee.

No. 03–95–00481–CV.

Court of Appeals of Texas,
Austin.

July 31, 1996.

J. Stephen Dillawn, Carla J. Cox, Small, Craig & Werkenthin, Austin, for appellant.

Dan Morales, Atty. Gen., Janet I. Monteros, Asst. Atty. Gen., General Litigation Div., Austin, for appellee.

Before POWERS, JONES and B.A. SMITH, JJ.

POWERS, Justice.

In a contested-case adjudication, the Texas Department of Human Services (the "Department") denied Sensitive Care, Inc., (the "Company") continued authority to provide Medicaid assistance under a contract with the State of Texas.[1] In the Company's suit for judicial review, the district court affirmed the Department decision and rejected the Company's request for declaratory relief. The Company appeals. We will reverse the district-court judgment and remand the case to the Department.

---

1. The State is required to ensure that providers of Medicaid assistance, such as Sensitive Care, Inc., meet federal regulations that fix minimum standards of patient care. *See* 42 C.F.R. § 430.10–.30 (1995). Originally the Texas Department of Health performed that function; the function was transferred to the Texas Department of Human Services effective September 1, 1993. *See* Act of June 8, 1993, 73d Leg., R.S., ch. 747, § 2, 1993 Tex. Gen. Laws 2920, 2921–24; Tex. Hum. Res.Code Ann. § 32.002–.042 (West 1990 & Supp.1996) (the "Code").

A Department of Health examiner conducted the contested case now before us and issued a proposal for decision. The Department of Health did not, however, receive the proposal for decision until after September 1, 1993, the date administration of the federal regulations was transferred to the Department of Human Services. An administrative law judge employed by the latter Department reviewed the contested-case record and, under authority delegated by the Department governing board, issued on November 18, 1993, a final order adjudicating the case. *See* Code § 21.003(a), .004; 40 Tex. Admin. Code § 79.1607 (West 1995) ("TAC"). The final order denied the Company continued participation ("recertification") in the Medicaid program based upon the Company's failure to meet minimum standards of patient care, a condition of the Company's contract with the State to furnish Medicaid assistance. *See* 42 C.F.R. § 442.12 (1995). For clarity and simplicity, we will discuss the controversy and the appeal as if the Department of Human Services (the "Department") had conducted the contested case from the beginning, departing from such usage in our discussion of the Company's point of error three.

## THE CONTROVERSY

Until rendition of the final order we now review, the Company provided Medicaid assistance, under a contract with the State, to patients in the Company's nursing home. Department employees inspected the facility in October 1990, finding several instances in which the Company failed to comply with State and federal regulations pertaining to patient-care plans and the use of physical restraints on patients. Notwithstanding these violations, the Department "recertified" the Company for 1991–92 with a proviso for automatic cancellation of the Company's contract if the deficiencies were not corrected. Another inspection in October 1991 again revealed violations of the regulations with regard to patient-care plans and physical restraints. The Department required correction of the deficiencies within ninety days. An inspection in November 1991 revealed the violations had not been corrected. When the deficiencies were found uncorrected in an inspection in January 1992, the Department "decertified" the Company as a Medicaid provider and rescinded the Company's contract effective January 31, 1992. Following a contested-case hearing, the Department declined to set aside its actions. The district court affirmed the Department decision after a substantial-evidence review. *See* Administrative Procedure Act, Tex. Gov't Code Ann. § 2001.174 (West 1996) ("APA").[2]

## FEDERAL STANDARDS FOR PATIENT CARE

The Department conducts inspections to ensure that Medicaid providers comply with minimum standards of patient care prescribed in federal and State regulations. The federal regulations distinguish between "level A" deficiencies, which pose an immediate threat to patient safety, and "level B" deficiencies which do not. *See* 54 Fed.Reg. 5359 (1989). The Department decision in the present case rests upon deficiencies pertaining to patient-care plans and the use of physical restraints on patients. Both are "level B" deficiencies.

■ In the Company's first point of error, it contends the Department decision is arbitrary, capricious, and an abuse of discretion because it is based solely upon repeated "level B" deficiencies that Congress never intended as grounds for terminating Medicaid certification. We disagree.

We do not believe the distinction between levels A and B was intended to preclude termination solely on the latter class of deficiencies. Indeed, the division into two classes was intended to avoid any "misunderstanding that violations of the 'lesser' requirements would not be subject to Federal enforcement." 54 Fed.Reg. 5316, 5317 (1989). Both classes are equally binding and enforceable; they are of equal dignity and not part of a qualitative hierarchy. *See id.; see also* 56 Fed.Reg. 48826, 48827 (1991). The congressional intention was simply that level B deficiencies might be corrected through means other than immediate termination. 54 Fed.Reg. 5316, 5318 (1989).

The Department did *not* immediately terminate the Company's authority and contract merely on the basis of the two level B deficiencies. Instead, the Department decision rests expressly upon 42 C.F.R. § 442.105(d). This regulation requires a state to terminate certification when an inspection reveals a *repetition* of deficiencies that existed in a preceding certification period unless the state is able to show (1) the provider achieved compliance at some point in the earlier period or (2) made a good-faith effort to remain in compliance but failed to do so for reasons beyond its control. 42 C.F.R. § 442.105(d) (1995). The Company's argument would effectively negate this provision and render essentially voluntary a provider's obligation to remedy level B deficiencies. We overrule the Company's first point of error.

---

2. All administrative actions in the present case occurred before September 1, 1993, and are governed by the Administrative Procedure and Texas Register Act ("APTRA"). *See* APTRA, 64th Leg., R.S., ch. 61 § 19, 1975 Tex. Gen. Laws 136, 136–148 (Tex.Rev.Civ. Stat. Ann. art. 6256–13a, § 19, since repealed and codified at Tex. Gov't Code Ann. § 2001.001 *et seq.* (APA)). Because the codification of the APA effective September 1, 1993, had no substantive effect on the relevant provisions, we cite the Texas Government Code for convenience.

## HEARSAY EVIDENCE

In its second point of error, the Company contends there is no evidence that deficiencies found in the October 1990 inspection were in fact the same deficiencies as those found in the subsequent inspections in October 1991 and January 1992. This contention depends upon whether the Departmental report of the October 1990 inspection was erroneously admitted in evidence over the Company's objection.

■ The Company objected to the offer of the report in evidence "for the truth of the matters contained therein." Interpreting the objection liberally, we hold it sufficient to inform the hearing officer that the Company intended an objection founded on the hearsay rule.

■ No testimony was elicited to corroborate the contents of the written report. The Company contends this effectively denied it an opportunity to examine or cross-examine the authors of the report. This does not, however, preclude admission of the official report in evidence. It is a matter pertaining only to the weight proper to be assigned the document. *See* Tex.R. Civ. Evid. 803(8)(B); *Bingham v. Bingham,* 811 S.W.2d 678, 684 (Tex.App.—Fort Worth 1991, no writ); 32 C.J.S. *Evidence* § 626 (1964).

■ A copy of the inspection report accompanied a "certificate" made by the purported custodian of Department records, over his signature and the Department seal, stating the copy was a true replica of a document contained in the official records of the Department. *See* Tex.R. Civ. Evid. 901(b)(7). The face of the copy shows it is a pre-printed form, entitled "Statements of Deficiencies and Plans for Corrections," issued by the federal Department of Health and Human Services Health Care Financing Corporation and approved by the federal Office of Management and Budget for use in evaluating nursing-home facilities. The copy purports to be a report regarding the October 1990 inspections. It bears on each page the purported signature of the facility director acknowledging that she had read and was aware of the deficiencies reported therein.

*See Cowan v. State,* 840 S.W.2d 435, 436–39 (Tex.Crim.App.1992) (face of document may show circumstantially its authenticity and requisites for admissibility as public record). A duty rested upon the Department to inspect the Company's facility and to make a report thereof. *See* 42 C.F.R. § 488.305–.335 (1995); 40 TAC §§ 19.1(b)(1), 19.101, 19.2202 (West 1995). The report was therefore admissible "unless the sources of information or other circumstances indicate a lack of trustworthiness." Tex.R. Civ. Evid. 803(8). We find no such impediment to admissibility here and the October 1990 report came within this exception to the hearsay rule. The decision in *Wright v. Lewis,* 777 S.W.2d 520 (Tex. App.—Corpus Christi 1989, writ denied), is not to the contrary. That decision pertains to a communication *to* an agency from an outsider, and not a record *of* the agency setting forth its activities or matters within its authority to investigate or its duty to report, as contemplated by Rule 803(8). *Id.* at 524. We overrule the Company's second point of error.

## SUBSTANTIAL EVIDENCE

■ In point of error three, the Company contends the body of evidence does not reasonably support the Department's findings of fact; these, in turn, do not reasonably support the Department's conclusions of law; and, the conclusions of law are legally erroneous for other reasons as well. The Company cites in support the decision in *Texas Health Facilities Commission v. Charter Medical–Dallas,* 665 S.W.2d 446, 452–53 (Tex.1984). Under the peculiar function of the "substantial-evidence rule" laid down in that decision, all the Company's contentions are arguable as a want of substantial evidence even though some do not pertain at all to the body of evidence. *See* John Powers, *Judicial Review of the Findings of Fact Made by Texas Administrative Agencies in Contested Cases,* 16 Tex. Tech. L.Rev. 465, 498–99 (1985).

The Department determined as follows in its conclusions of law: (1) the Company violated 25 TAC § 145.14(7)[3] by using physical

3. 25 TAC § 145.14(7) (West Supp.1992–93) was

repealed effective August 31, 1993. *See* 12 Tex.

restraints upon patients without having a physician's order to do so and violated 40 TAC § 19.401(a) and 42 C.F.R. § 483.13(a) by failing to determine, through use of a care plan, that physical restraints were necessary or that less-restrictive alternatives were not feasible; (2) the Company violated 40 TAC § 19.602 and 42 C.F.R. § 483.20 by failing to develop care plans for two patients and failing to mention in other patients' care plans that the patients were subject to physical restraints and suffered from skin problems; and (3) the Department justifiably denied "recertification" because the inspections in October 1991 and January 1992 revealed deficiencies in the use of physical restraints and the maintenance of patient-care plans that were repeat deficiencies from the October 1990 inspection and certification period.[4]

In purported support of the foregoing conclusions of law, the Department's final order sets forth the following findings of fact pertaining in the main to the results of the January 1992 inspection:[5]

1. Fourteen of thirty patients were subject to physical restraints.
2. Company records did not indicate that less-restrictive means of restraint had been considered or attempted.
3. In four instances, restraints were authorized by physician orders but the orders were dated before the October 1991 inspection.
4. Eleven of the fourteen restrained patients had care plans. One such plan, dated before October 1991, mentioned the use of physical restraints, but nine of the care plans, dated between October 1991 and January 1992, failed to mention physical restraints at all.
5. Physical restraints were used in ten instances without physician orders and in those cases the Company failed to determine through use of a care plan that the restraints were necessary or that less-restrictive alternatives were not feasible.
6. In one instance, the patient's care plan did not mention that the patient suffered from eight separate pressure sores at the time of the October 1991 inspection.
7. In two instances, the patients' care plans did not mention that the patient was subject to vest restraints at the time of the October 1991 inspection.
8. In two instances, the patients did not have care plans at the time of the October 1991 inspection, even though they had resided in the facility since

Reg. 2922, 2937 (1987), *repealed by* 18 Tex. Reg. 3060 (1993). Most of section 145 of title 25 of the Texas Administrative Code was repealed by the Department of Health on this date. Throughout our discussion, we will for convenience cite the 1992–93 version of title 25 of the Texas Administrative Code.

4. The regulations cited in the Department's conclusions of law provided as follows:

25 TAC § 145.14(7) required that patients be free of physical restraints except when restraints were authorized in writing by a physician for a specified and limited period of time, or when necessary to protect a patient from injury to himself or another. As discussed in the text, this regulation was not applicable at any time material to the present case.

40 TAC § 19.401(a) (West 1995) prohibits use of physical restraints for purposes of discipline or convenience, but allowed their use in treating a patient's medical symptoms. When so used, the restraints must be released as necessary to prevent deterioration in the patient's physical condition (but at least at two-hour intervals for a ten-minute period) and such use must be documented in the patient's clinical records. The provisions of 42 C.F.R. § 483.13(a) (1995) are generally to the same effect.

40 TAC § 19.602 (West 1995) requires the development of a comprehensive care plan for each patient within seven days after completion of an antecedent functional-capacity assessment for the patient. Under another regulation, such assessment must be performed within fourteen days of a patient's admission or before October 1, 1991, whichever is later in time. New assessments are required promptly after any significant change in the patient's physical or mental condition. These, in turn, are required to be set forth in the patient's care plan. The required contents of the care plan are: measurable short-term and long-term objectives and timetables to meet the patient's medical, nursing, and "psychosocial needs" as identified in the assessment. The provisions of 42 C.F.R. § 483.20 (1995) are generally to the same effect as 40 TAC § 19.602.

5. The findings are somewhat unclear because the inspection date to which they refer is uncertain. We have restated the findings, in the interest of clarity, as best we can.

October 23, 1990, and January 31, 1991, respectively.

We believe the findings of fact reasonably support the Department's Conclusion of Law Two regarding deficiencies in the matter of care plans and a resulting violation of the minimum standards of care set out in 40 TAC § 19.602 and 42 C.F.R. § 483.20. We find no legal infirmity in Conclusion of Law Two.

■ In contrast, we find legal error in the Department's Conclusion of Law One regarding deficiencies in the matter of physical restraints and an asserted violation of the minimum standards of care set out in 25 TAC § 145.14(7), 40 TAC § 19.401(a), and 42 C.F.R. § 483.13(a). Consequently it may not be said that the Department's findings of fact support its Conclusion of Law One.

Based upon supplementary briefs furnished by the parties, we conclude that 25 TAC § 145.14(7) did not apply to the Company after September 30, 1990, a date preceding the first inspection in October 1990, even though the regulation was not repealed until August 31, 1993. *See* 18 Tex. Reg. 3060 (1993). The provisions of 25 TAC § 145.14(7) ceased to apply to the Company because, effective October 1, 1990, the Company as a Medicaid provider became subject to new and different regulations promulgated by the Department of Human Services. *See* 40 TAC § 19.1 *et seq.* (West 1995). These new regulations did not require physician orders authorizing physical restraints nor did they prohibit restraints except as necessary to protect from injury the patient and others. The provisions of 25 TAC § 145.14(7) remained applicable to other operations and facilities regulated by the Department of Health, but not to Medicaid providers regulated by the Department of Human Services. *See* 25 TAC § 145.111;[6] 15 Tex. Reg. 5577 (1990).

And we cannot agree that 40 TAC § 19.401(a) and 42 C.F.R. § 483.13(a) required the Company to determine that physical restraints were necessary or that less-restrictive alternatives were not feasible. These regulations took a different tack.

They prohibited physical restraints for purposes of convenience or discipline and required that when used they must be released at specified times and their use must be documented in the clinical records. The new regulations do not mention "less restrictive alternatives" and we find no basis in the record for concluding that the word "necessary," as used in Conclusion of Law One, is a short-hand antonym for "purposes of convenience or discipline" as used in the regulations. In sum, the deficiencies stated in Conclusion of Law One do not correspond to the requirements found in the regulations cited therein; and the requirements found in the applicable regulations are not stated as deficiencies in the conclusion of law. We hold, therefore, that Conclusion of Law One is legally erroneous.

■ Must we nevertheless affirm the Department's final order and decision on a theory that Conclusions of Law Two and Three are a "valid basis" in the record for what the agency has done, notwithstanding its error in Conclusion of Law One? It is, of course, a general rule of administrative law that a reviewing court must uphold an agency decision on any legal basis shown in the record, even though the agency may have stated an erroneous reason for its decision. *See Railroad Comm'n v. City of Austin,* 524 S.W.2d 262, 279 (Tex.1975) (agency order omitting to state any legal basis for decision affirmed on question of law shown in record); *Texas Employment Comm'n v. Hays,* 360 S.W.2d 525, 527 (Tex.1962) (agency decision based on erroneous construction of statute affirmed when proper construction dictated same decision); *cf. Gulf Land Co. v. Atlantic Refining Co.,* 134 Tex. 59, 131 S.W.2d 73, 84 (1939) (reviewing court forbidden to affirm agency order on basis of controverted *fact* question not decided by agency itself in reaching its decision).

■ The general rule is not, however, unqualified. Concerning an agency's conclusions of law, a reviewing court must measure the sufficiency of the agency's order "by what it says" and not by judicial speculation about how the agency reasoned in reaching

6. *See* 18 Tex. Reg. 302 (1992), *repealed by* 18 Tex. Reg. 3060 (1993).

its final decision. *Morgan Drive Away, Inc. v. Railroad Comm'n,* 498 S.W.2d 147, 152 (Tex.1973). Specifically, a reviewing court is forbidden to uphold an agency's final decision based upon *one* conclusion of law when the agency rested its decision upon a *different* conclusion of law stated in its final order. *Gulf Land Co.,* 131 S.W.2d at 84. The same principle forbids our affirming the Department decision based upon Conclusions of Law Two and Three when the agency expressly based Conclusion of Law Three and its final decision upon Conclusions of Law One and Two *jointly.*[7] We must therefore reverse the agency decision and remand the case to the Department for such proceedings as may be necessary in light of our opinion.

In that regard, we should discuss further the Company's argument under point of error three in which the Company contends the body of evidence does not reasonably support the Department's findings of fact.

■■■ The evidentiary record contained both documentary evidence and testimony, including copies of inspection reports pertaining to the inspections in October 1990, October 1991, November 1991, and January 1992. The Company adduced controverting evidence including the care plans and medical records of particular patients. While it is true, as the Company contends, that the Department did not adduce testimony corroborating the deficiencies recorded in the inspection reports, we have held above that the reports themselves constituted competent evidence. The question of what weight to assign the conflicting evidence was a matter for the agency to determine. We are forbidden to do so. *See* APA § 2001.174(2). When, as here, the evidence would reasonably support either an affirmative finding or a negative finding, we must of course uphold

the agency finding. *See Auto Convoy Co. v. Railroad Comm'n,* 507 S.W.2d 718, 722 (Tex. 1974). We hold the Department's findings of fact are not unreasonable inferences from the body of evidence as it presently exists.

## DECLARATORY JUDGMENT

The Company petitioned the trial court for a declaratory judgment that the Department's authority to terminate Medicaid certification, based upon repeat deficiencies from a previous certification period as provided in 25 TAC § 145.144(f),[8] did not survive repeal of that regulation at a date before rendition of the Department's final order in the contested case. Consequently, the Company contended, the Department exceeded its authority in terminating the Company's certification on the basis of 25 TAC § 145.144(f) and the trial court erred in not awarding the Company declaratory relief to that effect. In point of error four, the Company raises the claim in this Court.

■■■ The Company's argument depends upon the correctness of its underlying theory that the Department's authority to terminate certification vanished with the repeal of 25 TAC § 145.144(f). The theory is incorrect. Notwithstanding the repeal of 25 TAC § 145.144(f), the provisions of 42 C.F.R. § 442.105(d) remained in effect as a federal requirement applicable to the case and binding on the Department. The federal regulation authorized termination for repeat deficiencies from an earlier certification period, as discussed previously in our opinion. The final order does not mention 25 TAC § 145.144(f). Any declaratory judgment pertaining to that regulation would have amounted in the circumstances to an advisory opinion beyond the power of the trial court to render. *See Southwest Airlines v.*

---

7. In a particular case, of course, the agency record may show with reasonable certainty that the agency would have reached the same decision notwithstanding the invalidity of one of its several conclusions of law or findings of fact. In such a case, a reviewing court will not reverse the agency decision because the error has not *prejudiced* the complaining party. *See* APA § 2001.174(2) (reviewing court "shall reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, infer-

ences, conclusions, or decisions" are affected by specified errors of law). The record in the present appeal does not show with reasonable certainty that the Department would have reached the same final decision and Conclusion of Law Three based upon Conclusion of Law Two standing alone.

8. *See* 3 Tex. Reg. 3194, 3197 (1978), *amended by* 14 Tex. Reg. 5071 (1989), *repealed by* 18 Tex. Reg. 3060 (1993).

**830**

*Texas High–Speed Rail Auth.,* 863 S.W.2d 123, 125 (Tex.App.—Austin 1993, writ denied). We overrule point of error four.

### PRE–JUDGMENT INTEREST

In point of error five, the Company contends it is entitled to pre-judgment interest on the amount of Medicaid payments it did not receive after termination of its contract—payments it is entitled to receive, however, only on obtaining a final judgment that its contract was erroneously terminated. We do not reach this point of error because it has not been determined that the contract was erroneously terminated.

For the reasons stated in our discussion of point of error three, we reverse the Department's final order and the trial-court judgment affirming that order. We remand the case to the Department for further proceedings not inconsistent with our opinion.