# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00440-CV

**Darold E. Wingert, Wingert Water Systems, Inc., and Alvena Wingert, Appellants**

**v.**

**Norris J. DeVoll, Appellee**

## FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT
## NO. C2006-1271A, HONORABLE DIB WALDRIP, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

After a dispute over the management of a property owners' association, appellant Darold Wingert filed suit against five members of the association's board of directors, including appellee Norris DeVoll, for libel and slander. DeVoll, representing himself pro se, filed a number of counterclaims against Darold Wingert and third-party defendants Wingert Water Systems, Inc. and Alvena Wingert (collectively, "the Wingerts").[1] The trial court granted summary judgment in favor of all defendants on Darold Wingert's libel and slander claims, then proceeded with a bench trial on DeVoll's counterclaims, ultimately awarding damages to DeVoll for intentional infliction of emotional distress and civil conspiracy. On appeal, the Wingerts argue that the trial court erred in awarding damages for intentional infliction of emotional distress and civil conspiracy. For the reasons that follow, we reverse and render judgment that DeVoll take nothing.

---

[1] DeVoll proceeded pro se at trial, but is represented by counsel on appeal.

## BACKGROUND

This suit arose from the same events described by this Court in *Wingert v. Scenic Heights Subdivision Property Owners Ass'n*, No. 03-07-00297-CV, 2008 Tex. App. LEXIS 5334 (Tex. App.—Austin July 16, 2008, no pet.) (mem. op.) ("*Wingert I*"). In October 2006, after an at-large election by the Association's membership, Darold Wingert assumed the role of president of the Scenic Heights Subdivision Property Owners Association ("the Association"). Litigation ensued when members of the Association's board of directors, including DeVoll, refused to recognize Wingert's election, based on the fact that the Association bylaws required officers to be chosen by the directors. In *Wingert I*, this Court affirmed the trial court's judgment declaring that the at-large election was not legally effective and permanently enjoining Darold Wingert and two others from representing or acting on behalf of the Association. *See id.* at *1-2.

Darold Wingert then filed the present suit against DeVoll and four other Association board members individually, seeking damages of $20 million for libel and slander based on statements that were allegedly posted on the Association's website in connection with the initial litigation. DeVoll brought counterclaims against the Wingerts for (1) negligence, (2) slander of title, (3) filing a fraudulent document, (4) civil conspiracy, (5) abuse of litigation,[2] (6) intentional infliction of emotional distress, and (7) defamation. The trial court granted summary judgment dismissing Darold Wingert's libel and slander claims as to all five defendants, entered an agreed

---

[2] In his pleadings, DeVoll identified this claim as "Abuse of Litigation / Litigation Process (Abuse of Process)," and based it on the allegation that Darold Wingert filed "a frivolous and groundless lawsuit as a tool of intimidation and threat of personal economic damage . . . for no reason but to terrorize the defendants."

order of dismissal with prejudice as to the counterclaims of all defendants other than DeVoll, and proceeded to a bench trial on the merits of DeVoll's counterclaims.

At trial, DeVoll stated on the record that he was abandoning his abuse-of-litigation claim. *See In re C.C.J.*, 244 S.W.3d 911, 921 (Tex. App.—Dallas 2008, no pet.) (observing that party may abandon claim by stipulation at trial). With respect to his remaining claims, DeVoll alleged that the Wingerts had conspired to undermine his authority with the Association membership by perpetuating rumors that he did not own property in the Scenic Heights Subdivision. To support this allegation, DeVoll produced several petitions, signed by members of the Association, requesting that DeVoll and the other sitting board members take certain actions.[3] The cover sheet on each petition displayed a Wingert Water Systems letterhead and included a handwritten note, stating, "Mr[.] Norris DeVoll does not own property in Scenic Heights Subdivision. He is not and cannot be a member of the Scenic Height[s] Subdivision Property Owner Association." At trial, DeVoll asserted that the Wingert Water Systems fax machine was used to send the petitions and that employees of Wingert Water Systems canvassed the subdivision to obtain signatures for the petitions. Neither claim was disputed by the Wingerts. DeVoll also introduced into evidence a video clip of Darold Wingert announcing at an Association meeting that DeVoll was not a property owner. Finally, DeVoll elicited testimony from one Scenic Heights resident who stated that she had voted to remove DeVoll from office because she had heard that he wanted to "foreclose" and "steal"

---

[3] One of these petitions requested that the board members step down and allow the officers elected during the October 2006 election, including Darold Wingert, to direct the Association's operations. Another petition included a "demand that Norris DeVoll stop acting as an attorney since he is not licensed to practice law."

3

property from residents who did not pay their Association dues. This resident further testified, however, that she had not heard these rumors from the Wingerts.

DeVoll testified that as a result of the rumors circulating about him, he was "afraid [that he had] been stricken from a number of Christmas lists" and that he has "no neighbors that will have anything to do with [him] basically in that subdivision." DeVoll further testified that he was "subjected to nails in the driveway, feces in the mailbox, landscaping scrubs mysteriously dying, eggs splattered on the deck and the house, multiple litigations, reported to the Unauthorized Practice of Law Committee twice, criminal charges, [and] four simultaneous flats on a boat trailer." DeVoll declined, however, to attribute any of these acts to the Wingerts, stating:

> [T]he criminal charges that were alleged, I never figured out where it came from or how it happened, but it—but it falls right in line with the nails in the driveway and the feces in the mailbox and stuff like that. I have some ideas, but I told my criminal attorney that I wouldn't even care to voice them as much pain as actually resulted from that. I wouldn't want it—to put anybody else through that with no more information than—than I have at this point other than suspicion, but it caused a tremendous amount of pain and suffering and—and discord in my family and my children and costs, just—just tremendous amount of costs.

DeVoll also testified that he suffered a heart attack during a summary-judgment hearing in the pending litigation. Other than his own assertion that he had a heart attack "over all this mess," DeVoll presented no evidence regarding the cause of his heart attack. DeVoll claimed that he had $30,000 in medical bills related to the heart attack, but did not introduce any evidence of his medical expenses.

DeVoll also argued at trial that Darold Wingert had interfered with his official duties as a member of the Association board of directors by unilaterally filing a corrected renewal of deed

4

restrictions with the Comal County clerk in November 2006. This action, taken while Wingert was acting as president of the Association after the invalid October 2006 election, was later deemed "null and void and of no legal effect" by the trial court in *Wingert I.* 2008 Tex. App. LEXIS 5334, at *7. That ruling was not challenged on appeal. *See generally id.* DeVoll claimed to have suffered direct economic losses due to Darold Wingert's improper filing of the deed restrictions, producing a signed contract for sale that listed "NOPA Hills Trust (Norris DeVoll Trustee)" as the seller of a lot in the Scenic Heights subdivision. According to DeVoll, the changes that Darold Wingert improperly made to the subdivision's deed restrictions caused the prospective buyer to back out of the deal, which in turn caused DeVoll to lose approximately $134,000 in profit.[4]

DeVoll testified that throughout his controversy with the Wingerts and the accompanying litigation, his net income from his real estate business dropped from $218,000 in 2005 and $204,000 in 2006 to negative $41,000 in 2007 and negative $133,000 in 2008. DeVoll attributed this reduction in income, at least in part, to the fact that he was so engrossed in the litigation that he could not "work on the day-to-day things that generate income."

After hearing the evidence, the trial court found in favor of DeVoll on his claims of intentional infliction of emotional distress and civil conspiracy. Specifically, the trial court's judgment awarded $30,000 in damages on DeVoll's "claims of intentional infliction of emotional distress and mental anguish by filing a frivolous lawsuit" and $20,000 in damages on DeVoll's

---

[4] DeVoll testified that the appraised value of the house was $62,000 when he acquired it, and that the contract for sale listed a sale price of $196,400. While DeVoll also testified to spending approximately $45,000 on renovations, he did not reduce his requested damages by that amount. DeVoll asserted that as trustee and beneficiary of the NOPA Hills Trust, he was entitled to seek damages for the loss of the sale directly, rather than on behalf of the trust.

5

"claims of civil conspiracy to interfere with [his] official duties." In addition, the trial court awarded DeVoll "all costs of court incurred in connection with the filing, service, and prosecution of this action," specifying a total costs award of $8,110.41.

At the Wingerts' request, the trial court issued findings of fact and conclusions of law to support its judgment. Of significance to this appeal, the trial court's findings included the following:

3.      [The Wingerts] interfered with [DeVoll's] official duties;

. . .

6.      There was an express agreement as well as a tacit agreement by, between and among [the Wingerts] to interfere with [DeVoll's] official duties;

7.      [The Wingerts'] interference with official duties of [DeVoll] constituted a violation of the Temporary Restraining Order;

8.      [Darold Wingert] filed a frivolous lawsuit against [DeVoll];

. . .

12.     [DeVoll] suffered damages as a result of [Wingert's] filing of a frivolous lawsuit and the interference with [DeVoll's] duties;

. . .

14.     [The Wingerts'] actions caused [DeVoll] mental anguish and emotional distress.

. . .

16.     [DeVoll] suffered medical complications from the emotional distress[.]

17.     [DeVoll] suffered damages in the amount of . . . ($30,000), including but not limited to medical expenses, as a proximate result of the emotional distress;

18. [DeVoll] suffered damages in the amount of . . . ($20,000), as a result of the tortious interference with [DeVoll's] official duties;

19. [DeVoll] incurred costs in the amount of [$8,110.41] in defending and prosecuting the instant lawsuit.

The trial court also made the following conclusions of law:

5. The filing of the instant lawsuit was not legally justified, was frivolous, and was filed for improper purpose of apparent retribution against [DeVoll] for his participation in obtaining a legal temporary restraining order and temporary injunction against [Darold Wingert and two other individuals];

6. Actions of [Darold Wingert], his family members, and employees of [Wingert Water Systems] constitute a conspiracy to interfere with [DeVoll's] official duties to the [Association];

. . .

8. [The Wingerts'] actions of interference were in contravention of the Bylaws of the [Association] and constitute an actionable tort[.]

The Wingerts filed a notice of appeal from the trial court's judgment, but did not file a motion for new trial or any other post-judgment motion beyond their request for findings of fact and conclusions of law.

**STANDARD OF REVIEW**

In an appeal from a bench trial, the trial court's findings of fact have the same force and dignity as a jury's verdict and are reviewable for legal and factual sufficiency under the same standards applied to the review of a jury verdict. *Anderson v. City of Seven Points*, 806 S.W.2d 791,

7

794 (Tex. 1991); *Ludwig v. Encore Med., L.P.*, 191 S.W.3d 285, 294 (Tex. App.—Austin 2006, pet. denied).

When reviewing a finding for legal sufficiency, we must credit evidence favorable to the judgment if a reasonable factfinder could, disregard contrary evidence unless a reasonable factfinder could not, and reverse the factfinder's determination only if the evidence presented in the trial court would not enable a reasonable and fair-minded factfinder to reach the judgment under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We will sustain the appellants' legal-sufficiency challenges if the record reveals: (1) the complete absence of evidence of a vital fact; (2) that the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) that the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) that the evidence conclusively establishes the opposite of a vital fact. *See id.* at 810. More than a scintilla of evidence exists if the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004).

When considering a factual-sufficiency challenge, we consider all the evidence and set aside the judgment only if it is so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). Under either standard of review, we must be mindful that the trial court as finder of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986).

We review the trial court's conclusions of law de novo. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). Although appellants may not challenge a trial court's conclusions of law for factual sufficiency, we may review the trial court's legal conclusions drawn from the facts to determine whether the conclusions are correct. *Id.*

## DISCUSSION

*Intentional Infliction of Emotional Distress*

In their first point of error, the Wingerts argue that recovery for intentional infliction of emotional distress was not available to DeVoll because it is a "gap-filler" tort that should not be used "[w]here the gravamen of a plaintiff's complaint is really another tort." *Hoffmann-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004); *see also Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998) ("[A] claim for intentional infliction of emotional distress cannot be maintained when the risk that emotional distress will result is merely incidental to the commission of some other tort."). Alternatively, the Wingerts argue that the trial court's finding of intentional infliction of emotion distress is based on legally and factually insufficient evidence.

DeVoll contends that the Wingerts have waived their "gap-filler" argument by raising it for the first time on appeal. *See* Tex. R. App. P. 33.1(a). However, because the Wingerts' evidentiary challenges may be raised for the first time on appeal and are dispositive on this issue, we need not address the Wingerts' "gap-filler" argument or DeVoll's contention that it was waived. *See* Tex. R. App. P. 33.1(d) (complaint regarding sufficiency of evidence may be raised for first time on appeal from bench trial).

9

To recover damages for intentional infliction of emotional distress, a plaintiff must show that (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. *Hoffmann-La Roche, Inc.*, 144 S.W.3d at 445. Extreme and outrageous conduct is conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993)). Liability "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.*

On appeal, DeVoll concedes that the evidence is insufficient to support his recovery for intentional infliction of emotional distress. He argues, however, that the trial court's award of $30,000 in damages for "intentional infliction of emotional distress and mental anguish" should be upheld because the evidence is sufficient to support mental anguish. Mental anguish is not an independent cause of action, but represents an element of recoverable damages when some otherwise cognizable legal duty is breached. *See Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 822 n.1 (Tex. 1997).

DeVoll contends that this Court may uphold the award of mental anguish damages based on evidence of the mental anguish resulting from Darold Wingert's "frivolous lawsuit" or from the Wingerts' "per se defamatory statements." While the trial court's judgment expressly links the award for "intentional infliction of emotional distress and mental anguish" to the Wingerts' action of "filing a frivolous lawsuit," DeVoll clearly stated on the record at trial, in both his opening

10

statement and closing argument, that he wished to abandon his cause of action for abuse of litigation.[5] A trial court cannot properly award damages on the basis of an abandoned legal theory, and certainly cannot sua sponte award damages for a claim that was not presented at trial. *Cf. Goffney v. Rabson*, 56 S.W.3d 186, 190 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (reversing judgment awarding damages for breach of contract, breach of fiduciary duty, and Deceptive Trade Practices Act violations, because each were "essentially legal malpractice claims," and claimant abandoned legal malpractice cause of action prior to trial); *City of Beaumont v. Excavators & Constructors, Inc.*, 870 S.W.2d 123, 144 (Tex. App.—Beaumont 1993, writ denied) (holding that trial court erred in sua sponte rendering judgment on untried issue). While DeVoll also argues that the award of mental anguish can be upheld based on "per se defamatory statements" by the Wingerts, the record reflects that the trial court expressly declined to award any damages to DeVoll on his defamation claim.[6]

Given DeVoll's concession that the evidence is insufficient to support an award of damages for intentional infliction of emotional distress, and the fact that mental anguish damages were not awarded for any other claim properly before the trial court, we sustain the Wingerts' first point of error.

---

[5] We note also that DeVoll did not seek sanctions for the filing of a frivolous pleading under section 9.012 of the civil practice and remedies code, nor did he file a motion for sanctions under Texas Rule of Civil Procedure 13. *See* Tex. Civ. Prac. & Rem. Code Ann. § 9.012 (West 2002); Tex. R. Civ. P. 13 (authorizing imposition of sanctions for pleadings, motions, or other papers that are "brought in bad faith or groundless and brought for the purpose of harassment").

[6] The record contains two copies of the final judgment. While identical in substance, one version appears to be the draft judgment submitted by DeVoll, with handwritten notes and strike-outs to indicate changes made by the trial court. One of these handwritten changes includes crossing out language that would award damages to DeVoll for defamation.

*Civil Conspiracy*

In their second point of error, the Wingerts argue that DeVoll's claim for civil conspiracy fails as a matter of law because DeVoll failed to establish an underlying tort, a necessary element of civil conspiracy. *See Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996) (holding that civil conspiracy "might be called a derivative tort," as "defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable"). As with intentional infliction of emotional distress, DeVoll argues that the Wingerts have waived this complaint by raising it for the first time on appeal. *See* Tex. R. App. P. 33.1(a). However, because the Wingerts contend that DeVoll's claim fails because there is no evidence of an underlying tort, this argument represents a challenge to the legal sufficiency of the evidence, which can be raised for the first time on appeal. *See* Tex. R. App. P. 33.1(d) (evidentiary challenges may be raised for first time on appeal from bench trial).

A civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983). There is no independent liability for civil conspiracy, so in order to prevail on a civil conspiracy claim, "the plaintiff must show the defendant was liable for some underlying tort." *Four Bros. Boat Works, Inc. v. Tesoro Petrol. Cos.*, 217 S.W.3d 653, 668 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). If the underlying tort claim fails, the conspiracy claim fails as well as a matter of law. *Brewer v. Capital Cities/ABC, Inc.*, 986 S.W.2d 636, 642 (Tex. App.—Fort Worth 1998, no pet.) ("Because appellants' libel claim . . . has failed, so must their claim for conspiracy to libel."); *see also Schoellkopf v. Pledger*, 778 S.W.2d 897, 900

12

(Tex. App.—Dallas 1989, writ denied) (observing that "the jury's findings on conspiracy are relevant only if we find in [appellee's] favor on one of the other tort theories pleaded," and holding that because appellee "failed to establish any other substantive tort, . . . there is no independent liability for conspiracy").

In DeVoll's pleadings, he alleges that the Wingerts conspired to "exploit ambiguities in the governing documents of the subdivision with the ultimate goal of avoiding or to void and invalidate deed restrictions," and to "interfere with [DeVoll's] official duties of enforcing deed restrictions," as a member of the Association board of directors. On appeal, DeVoll takes the position that "intentional interference with official duties" is the underlying tort giving rise to his conspiracy claim, and asks this Court to recognize the existence of such a cause of action. The trial court appears to have premised its award of damages for civil conspiracy on this cause of action, as the judgment expressly awards damages on DeVoll's "claims of civil conspiracy to interfere with [DeVoll's] official duties."[7]

Assuming without deciding that this Court would choose to recognize a cause of action for tortious interference with the official duties of an officer or director of a homeowners' association, the fact remains that DeVoll did not seek to hold any named defendant liable for intentional interference with official duties, as he did not plead that cause of action independently of his conspiracy claim. As a result, "intentional interference with official duties" cannot serve as

---

[7] The trial court's conclusions of law also state that the Wingerts' actions "constitute a conspiracy to interfere with [DeVoll's] official duties to the [Association]," and that the Wingerts' "actions of interference were in contravention of the Bylaws of the [Association] and constitute an actionable tort."

13

the underlying tort for DeVoll's conspiracy claim. *See Tilton*, 925 S.W.2d at 681 ("[D]efendant's liability for conspiracy depends on participation in some underlying tort *for which the plaintiff seeks to hold at least one of the named defendants liable*.") (emphasis added).

DeVoll does not assert that any of his pleaded causes of action constitute the underlying tort supporting his civil conspiracy claim. Nor could he do so, as each of these claims has failed, either at trial or on appeal. Where all other tort claims have failed, a civil conspiracy claim must also fail. *Brewer*, 986 S.W.2d at 642; *Schoellkopf*, 778 S.W.2d at 900.

In light of the foregoing, we hold that there is no evidence of any underlying tort that could properly support DeVoll's claim of civil conspiracy, and therefore the conspiracy claim is based on legally insufficient evidence. *See O & B Farms, Inc. v. Black*, 300 S.W.3d 418, 421 (Tex. App.—Houston [14th Dist.] 2009, pet. filed) (sustaining appellants' legal sufficiency challenge to civil conspiracy finding because "no legally sufficient evidence supports appellees' fraud claims," and "without a fraud finding, there is no underlying tort to support a civil conspiracy finding"). The Wingerts' second point of error is sustained.

*Costs of Court*

In their third point of error, the Wingerts argue that the trial court erred in awarding costs of court to DeVoll. The trial court's judgment specifically awards to DeVoll "all costs of court incurred in connection with the filing, service, and prosecution of this action being [$8,110.41] with interest thereon." The Wingerts contend that in calculating the amount of court costs, the trial court erroneously included ordinary expenses incurred by DeVoll in defending against Darold Wingert's claims or in prosecuting his own counterclaims. *See Flint & Assocs. v. Intercontinental*

14

*Pipe & Steel, Inc.*, 739 S.W.2d 622, 626 (Tex. App.—Dallas 1987, writ denied) (citing *Hammonds v. Hammonds*, 313 S.W.2d 603, 605 (Tex. 1958)) (holding that ordinary expenses incurred by party in prosecuting or defending suit cannot be recovered by way of court costs unless permitted by statute or equitable principle).  DeVoll, on the other hand, asserts that a challenge to the inclusion of certain items in an award of court costs must be raised in a motion to re-tax costs, so that by failing to file a motion to re-tax costs in the trial court, the Wingerts have waived this issue.  *See Wright v. Pino*, 163 S.W.3d 259, 261 (Tex. App.—Fort Worth 2005, no pet.).

Texas Rule of Civil Procedure 131 provides that the "successful party to a suit shall recover of his adversary all costs incurred therein, except where otherwise provided."  Tex. R. Civ. P. 131.  Under Rule 139, appellants who prevail on appeal may recover costs of court from both the trial court and the court of appeals.  Tex. R. Civ. P. 139.  Because the Wingerts are the prevailing parties on appeal, a strict application of Rule 139 would allow them to recover their costs of court, both at trial and on appeal, and would render moot their complaint regarding the calculation of costs awarded to DeVoll.  *See id.*  Rule 141, however, provides that "for good cause," we may award costs other than as provided by the rules.  Tex. R. Civ. P. 141; *see also Bryant v. Lucent Techs., Inc.*, 175 S.W.3d 845, 852 (Tex. App.—Waco 2005, pet. denied) (applying Rule 141 to allow court of appeals to allocate trial court costs in manner deviating from Rule 139).[8]  In the present case, both

---

[8] Texas Rule of Appellate Procedure 43.4 also allows a court of appeals to tax costs in a manner not described in the rules "as required by law or for good cause."  Tex. R. App. P. 43.4; *see also Recognition Commc'ns, Inc. v. American Auto. Ass'n, Inc.*, 154 S.W.3d 878, 894 (Tex. App.—Dallas 2005, pet. denied) (holding that Rule 43.4 allows appellate court "to exercise our discretion to determine how 'costs' shall be awarded for an appeal as well as for trial in recognition of the result on appeal").

15

Darold Wingert, as plaintiff, and DeVoll, as counter-plaintiff, ultimately lost on the claims they raised at trial. Accordingly, we hold that each party shall be liable for its own trial court costs, while the Wingerts, as prevailing parties on appeal, may recover their appellate court costs. As a result of this determination, the Wingerts' complaint regarding the trial court's calculation of costs awarded to DeVoll is moot.[9]

## CONCLUSION

We reverse the trial court's award of damages for intentional infliction of emotional distress and civil conspiracy and render judgment that DeVoll take nothing.

_____

Diane M. Henson, Justice

Before Justices Patterson, Puryear and Henson

Reversed and Rendered

Filed: August 20, 2010

---

[9] We note here that costs, within the meaning of Texas Rules of Civil Procedure 125 through 149, "are those items in the clerk's bill of costs." *Pitts v. Dallas County Bail Bond Bd.*, 23 S.W.3d 407, 417 (Tex. App.—Amarillo 2000, pet. denied). In response to a request for an award of court costs, "the court's role is to adjudicate which party or parties is to bear the costs of court, not to determine the correctness of specific items." *Madison v. Williamson*, 241 S.W.3d 145, 158 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). As a result, the trial court's judgment may state that costs are awarded against a certain party, but should not state the amount taxed as costs. *Id.*; *see also Williams v. Colthurst*, 253 S.W.3d 353, 363 (Tex. App.—Eastland 2008, no pet.). Taxing costs, as opposed to adjudication of costs, is a ministerial duty of the clerk of the trial court. *Madison*, 241 S.W.3d at 158. Thus, a trial court's award of court costs is necessarily limited to the amount of costs represented in the clerk's bill of costs, regardless of the amount specifically stated in the judgment. *See Pitts*, 23 S.W.3d at 417; *see also Wood v. Wood*, 320 S.W.2d 807, 812-13 (Tex. 1959).