**Don Leonard BREWER and Gary Glen Brown, Appellants,**

v.

**CAPITAL CITIES/ABC, INC., American Broadcasting Companies, Inc., d/b/a ABC News (20/20), Katherine Bates, and Dewayne Anderton, Appellees.**

No. 2–97–189–CV.

Court of Appeals of Texas, Fort Worth.

Oct. 15, 1998.

Publication Ordered Feb. 10, 1999.

Hill, Gilstrap and Ann Jones, Arlington, for Appellant.

Haynes & Boone, L.L.P., Donald C. Templin, and David Harper, Dallas, Jackson & Walker and Frank C. Vecella, and Watson, Caraway, et al., Vickie Rainwater and E.L. Caraway, Fort Worth, for Appellee.

Before Panel B DAY, RICHARDS, and HOLMAN, JJ.

## OPINION

DAVID L. RICHARDS, Justice.

### Introduction

Appellants Don Leonard Brewer and Gary Glen Brown appeal from a summary judgment in favor of Capital Cities/ABC, Inc.; American Broadcasting Company, Inc. d/b/a ABC News (20/20); Katherine Bates; and Dewayne Anderton on their libel suit. Appellants argue that the trial court erred in granting summary judgment because (1) ABC's statements were defamatory, (2) some

of the statements were "of or concerning" Brown, (3) appellees failed to show that the defamatory statements were true, (4) appellants are not public figures or public officials, (5) appellees did not negate malice, (6) appellees failed to show that the defamatory statements were privileged, (7) health department reports are not admissible, and (8) Anderton and Bates did not meet their summary judgment burdens. Appellants further allege that the trial court erred in not permitting Anderton to be questioned about ABC's confidential sources. ABC raises one cross-point contending that this appeal should be dismissed for want of jurisdiction on the basis that it was untimely filed. Because we conclude (1) this appeal was timely filed, (2) the trial court properly granted summary judgment for Bates because she did not defame appellants, and (3) the trial court properly granted summary judgment for Anderton and ABC because the complained of statements were privileged, we affirm.

### Summary of Relevant Facts

Brewer is an owner and operator of numerous nursing homes and other long-term health care facilities in Texas and, until October 1991, was a member of the Texas Board of Health. Brown alleges that he is a 50% shareholder in the corporations that own Brewer's various nursing homes. Appellants claim they were defamed by a 20/20 broadcast about the quality of care in Texas nursing homes. The report, "Victims of Greed," aired on October 25, 1991 and concerned abuse, neglect, improper and inadequate care, and other deplorable conditions in Texas nursing homes.

Near the beginning of the report, there is hidden camera footage of patient abuse and neglect inside two Texas nursing homes not owned by appellants: the Webber Nursing Home in Fort Worth and Shady Meadows Nursing Home just outside of Dallas. Brewer was first mentioned mid-way through the report when Tom Jarriel, the 20/20 reporter covering the story, referred to Brewer's ownership of several nursing homes in Texas, his

position on the Texas Board of Health, his salary, and the profits earned by one such home.

Jarriel also noted that inspections by the Texas Department of Health ("TDH") in Brewer's homes had resulted in citations for deficiencies in patient care, that Brewer's homes had been fined, and that not all of the fines had been paid. Additionally, Jarriel stated that Brewer faced possible criminal liability for buying and selling nursing homes while on the Board of Health, that three of Brewer's homes had appeared on the TDH "worse case" list, and that Brewer had recently resigned from the Board of Health and left the state. The report never mentioned Brown by name.

Anderton became involved when Gareth Harvey, the producer of the report, contacted him to videotape inside several Texas nursing homes. Anderton did not, however, videotape inside of any homes owned or operated by appellants. Anderton was not a source for the report, was not interviewed for the report, did not participate in the editing of the report, and did not appear in the report.

Bates has been active in an organization called United People for Better Nursing Home Care since approximately 1979. She was interviewed for the 20/20 report regarding the state of the nursing home industry in Texas. Bates spoke only a few brief times during the report. At no time during the report did Bates mention or refer to appellants.

### Procedural History

On August 20, 1992, appellants sued ABC, Anderton, and Bates alleging libel and conspiracy to commit libel.[1] Appellants filed a second amended petition on May 13, 1994 in which they also referred to intentional infliction of emotional distress. Anderton filed a motion for summary judgment on July 22, 1994 alleging that appellant's claims against him failed as a matter of law because he did not defame appellants, nor

---

1. Appellants also sued David Marks in their original petition, however, Marks was nonsuited on

November 22, 1994.

conspire to defame them. On June 15, 1995, after extensive discovery, ABC filed a motion for summary judgment asserting that (1) the statements in the report about which appellants complained were true, privileged under section 73.002 of the Texas Civil Practice and Remedies Code, and not defamatory, (2) the report was not "of or concerning" Brown, and (3) the report was not published with actual malice.

Anderton filed a supplemental motion for summary judgment on August 3, 1995, incorporating all of ABC's arguments from their motion for summary judgment. Bates filed a motion for summary judgment on August 24, 1995, arguing that she did not mention appellants in the report, much less make any defamatory statement about appellants; that she did not meet with, discuss, or consult with any other defendant concerning an object or course of action to libel, slander, or harm appellants; and that she did not intend to libel, slander, or harm appellants in any way.

The trial court granted ABC's motion for summary judgment on November 17, 1995 and granted Anderton's and Bates's motions for summary judgment on December 8, 1995. All three motions were granted on general grounds.

## Jurisdiction

ABC argues in its cross-point that this appeal was untimely filed and should be dismissed for want of jurisdiction. An earlier appeal of this case was voluntarily dismissed for want of jurisdiction.[2] During that appeal, appellants discovered that the trial court had never signed an order granting their motion to nonsuit defendant David Marks. Since the suit against Marks had not been dismissed, the trial court's judgment was not final, and this court lacked jurisdiction to hear the appeal. On November 19, 1996, we granted appellants' motion to dismiss the appeal for want of jurisdiction.

Appellants then asked the trial court to sign an order nonsuiting Marks so that their appeal could go forward, but the trial court refused. ABC argued that our dismissal was not for want of jurisdiction but was for some other unstated reason. Appellants then sought mandamus relief from this court. On May 20, 1997, we granted their motion, ruling that "it is apparent that the appeal was dismissed for want of jurisdiction," and ordering the trial court to sign the order nonsuiting Marks.[3] *Brewer v. Davis*, No. 2–97–080–CV (Tex.App.—Fort Worth May 20, 1997, orig. proceeding) (not designated for publication). The trial court complied, and appellants perfected this appeal. ABC now raises the same jurisdictional issue.

■ However, on November 19, 1996, we expressly dismissed the appeal for lack of jurisdiction because the judgment was not final. At that point, ABC could have filed an application for writ of error in the Texas Supreme Court to challenge our jurisdictional ruling, but they did not. ABC was a party to the first appeal and is precluded from attacking our jurisdictional ruling in this second appeal. *Cf. Martin v. Stein*, 649 S.W.2d 342, 346 (Tex.App.—Fort Worth 1983, writ ref'd n.r.e.) (holding that a judgment of dismissal was res judicata with respect to a later attempt to bring a bill of review proceeding). Accordingly, we overrule ABC's sole cross-point.

## Standard of Review

In a summary judgment case, the issue on appeal is whether the movant met his summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *See* Tex.R. Civ. P. 166a(c); *Cate v. Dover Corp.*, 790 S.W.2d 559, 562 (Tex.1990); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). The summary judgment will be affirmed only

---

**2.** *See Brewer v. Capital Cities, Inc.*, No. 2–96–095–CV, slip op. at 1 (Tex.App.—Fort Worth Nov. 19, 1996, no writ) (not designated for publication).

**3.** Shortly after our mandamus ruling, ABC filed a motion with the Texas Supreme Court for leave

to file a mandamus petition to reverse our judgment and opinion of May 20, 1997. That motion was overruled on October 2, 1997. *Capital Cities—ABC Inc. v. Second Court of Appeals*, 41 Tex. Sup.Ct. J. 4 (Oct. 4, 1997)(orig.proceeding).

if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law. *See City of Houston,* 589 S.W.2d at 678. The burden of proof is on the movant and all doubts about the existence of a genuine issue of a material fact are resolved against the movant. *See Acker v. Texas Water Comm'n,* 790 S.W.2d 299, 301–02 (Tex.1990); *Cate,* 790 S.W.2d at 562; *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965).

In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence will be disregarded and the evidence favorable to the nonmovant will be accepted as true. *See Harwell v. State Farm Mut. Auto. Ins. Co.,* 896 S.W.2d 170, 173 (Tex.1995); *Montgomery v. Kennedy,* 669 S.W.2d 309, 311 (Tex.1984). Evidence that favors the movant's position will not be considered unless it is uncontroverted. *See Great Am.,* 391 S.W.2d at 47. If the uncontroverted evidence is from an interested witness, it does nothing more than raise a fact issue unless it is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted. *See* TEX.R. CIV. P. 166a(c).

A defendant is entitled to summary judgment if the summary judgment evidence establishes, as a matter of law, that at least one element of a plaintiff's cause of action cannot be established. *See Science Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997). To accomplish this, the defendant-movant must present summary judgment evidence that negates an element of the plaintiff's claim. Once this evidence is presented, the burden shifts to the plaintiff to put on competent controverting evidence that proves the existence of a genuine issue of material fact with regard to the element challenged by the defendant. *See Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 197 (Tex.1995).

When the trial court's order does not specify the grounds relied on for its ruling, the reviewing court will affirm the summary judgment if any theory advanced in the motion is meritorious. *See Stephens v. Delhi Gas Pipeline Corp.,* 924 S.W.2d 765, 768 (Tex.App.—Texarkana 1996, no writ); *Insurance Co. of N. Am. v. Security Ins. Co.,* 790 S.W.2d 407, 410 (Tex.App.—Houston [1st Dist] 1990, no writ).

### The Summary Judgment in Favor of Katherine Bates

■ In her motion for summary judgment, Bates argued that she did not mention appellants in the report, much less make any defamatory statement about appellants; that she did not meet with, discuss, or consult with any other defendant concerning an object or course of action to libel, slander, or harm appellants; and that she did not intend to libel, slander, or harm appellants in any way. The trial court granted her motion on December 8, 1995.

■ Bates was entitled to summary judgment if her evidence disproved as a matter of law one element of each of appellants' causes of action. *See Science Spectrum,* 941 S.W.2d at 911. Bates's affidavit establishes that she made no false statements about appellants during her interview. In fact, during the four times Bates speaks in the report, she never mentions or refers to appellants. Her affidavit further establishes that she did not meet with any other defendant to plan or discuss an objective to be accomplished concerning appellants.

■ Appellants complain that Bates's statements in her affidavit are made by an interested witness and are, thus, inadmissible.[4] However, if an interested witness offers evidence that is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and which could have been readily controverted, such evidence may form the basis of summary judgment in that person's favor. *See* TEX.R. CIV. P. 166a(c). Evidence can be readily controverted when it can be effectively countered by opposing coun-

---

4. Appellants also contend that Bates's affidavit is conclusory and, thus, not proper summary judgment evidence. However, because Bates makes only factual assertions in her affidavit and not legal conclusions, her affidavit is not conclusory and was properly admitted by the trial court.

sel. *See Casso v. Brand,* 776 S.W.2d 551, 558 (Tex.1989).

The thrust of Bates's affidavit was that she made no false statement about appellants. This is an essential element of libel and could have been controverted by appellants. Once this evidence was presented, the burden shifted to appellants to put on competent controverting evidence that proves the existence of a genuine issue of material fact regarding this element of their libel cause of action. *See Centeq Realty,* 899 S.W.2d at 197. However, appellants have made no attempt to controvert the statements in Bates's affidavit. She has therefore negated as a matter of law one essential element of libel.

■ Further, it is well-established that a conspiracy claim fails as a matter of law if the underlying claim has failed. *See Closs v. Goose Creek Ind. Sch. Dist.,* 874 S.W.2d 859, 872 (Tex.App.—Texarkana 1994, no writ); *Schoellkopf v. Pledger,* 778 S.W.2d 897, 900 (Tex.App.—Dallas 1989, writ denied). Because appellants' libel claim against Bates has failed, so must their claim for conspiracy to libel. Appellants' points one through nine as they relate to Bates are overruled.

### The Summary Judgments in Favor of DeWayne Anderton and ABC

The trial court granted ABC's motion for summary judgment on November 17, 1995 and granted Anderton's motion for summary judgment on December 8, 1995 on the grounds that (1) the statements in the report, about which appellants complained, were true, privileged under section 73.002 of the Texas Civil Practice and Remedies Code, and not defamatory; (2) the report was not "of or concerning" Brown; (3) the report was not published with actual malice; and (4) Anderton did not defame appellants, or conspire to defame appellants.

*Were the Statements Defamatory?*

A libel is a defamation expressed in written or other graphic form that tends to injure one's reputation, thereby exposing the person to public hatred, contempt, ridicule, or financial injury. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 73.001 (Vernon 1997); *Delta Air Lines, Inc. v. Norris,* 949 S.W.2d 422,

426 (Tex.App.—Waco 1997, no writ). The threshold question is whether ABC's statements are reasonably capable of a defamatory meaning. In their first point, appellants argue that the trial court erred in granting summary judgment because ABC's statements were defamatory.

The complained-of statements in the report were (1) appellants were responsible for patient abuse, (2) appellants engaged in "profiteering," (3) Brewer fled the state of Texas to avoid fines and criminal liability, and (4) Brewer declined to be interviewed. Whether words are capable of the defamatory meaning attributed to them by appellants is a question of law for the court. *See Musser v. Smith Protective Serv., Inc.,* 723 S.W.2d 653, 654-55 (Tex.1987); *Delta Air Lines,* 949 S.W.2d at 426. In making this determination, the court must construe the allegedly defamatory statements as a whole, in light of the surrounding circumstances based on how a person of ordinary intelligence would perceive the statement in its entirety. *See Carr v. Brasher,* 776 S.W.2d 567, 570 (Tex.1989).

■ ABC and Anderton argued in their motions for summary judgment that the statements in the report that appellants engaged in profiteering and that Brewer declined to be interviewed were not defamatory. Regarding the statement that appellants engaged in profiteering, appellants refer us to the following passage from the report:

JARRIEL [voice-over]: . . . [I]f Medicaid can provide enough money for good patient care, as the experts claim, *the most likely excuse for patient neglect is profiteering on the part of the owners.*

Case in point: The Sunnyvale Nursing Home. In 1989, it received $2.2 million in Medicaid money for patient care. The owners took away $200,000 in profits and paid one of the owners another $90,000 in salary. And guess who he is? His identity will surprise you as much as it did us. His name is Don Brewer. He has ownership in at least seven nursing homes in Texas, and he is the Nursing Home Representative on the Texas Board of Health, the highest policy-making body in the state.

[Emphasis added.]. The report makes clear that ABC presented the notion of "profiteering" to the viewing audience as its opinion, not a statement of fact. The complained-of language does not say that profiteering is an absolute fact, proven to be the only conceivable reason for patient neglect where Medicaid funds are provided; it merely asserts that "profiteering is the most likely reason."

█ In Texas, an opinion cannot form the basis of a defamation action. *See Carr,* 776 S.W.2d at 570 ("All assertions of opinion are protected by the first amendment to the United States Constitution and article I, section 8 of the Texas Constitution."); *A.H. Belo Corp. v. Rayzor,* 644 S.W.2d 71, 79 (Tex. App.—Fort Worth 1982, writ ref'd n.r.e.) ("Texas law required [plaintiff] to establish [defendant] published a false, defamatory statement of fact rather than an opinion."). This is particularly so when the facts underlying an opinion are set out in the publication itself, thereby allowing the listener to evaluate the facts and either accept or reject the opinion. *See El Paso Times, Inc. v. Kerr,* 706 S.W.2d 797, 799–800 (Tex.App.—El Paso 1986, writ ref'd n.r.e.), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 761 (1987). Based on the facts given in the report, viewers could easily decide for themselves the validity of ABC's opinion that "the most likely reason" for the deficient care was "profiteering." Accordingly, appellant's claim that ABC's statement regarding profiteering was defamatory was properly rejected by the trial court.

█ Without citing any authority for the proposition, appellants further allege that ABC's comment that Brewer declined to be interviewed was defamatory. A similar argument was made in *Chapin. Chapin v. Greve,* 787 F.Supp. 557 (E.D.Va.1992), *aff'd sub. nom. Chapin v. Knight–Ridder, Inc.,* 993 F.2d 1087 (4th Cir.1993). There the plaintiff contended that an article, which stated that he had declined to be interviewed, was libelous as suggesting that he "was being evasive in order to hide improprieties." *Id.* at 566. The court dismissed the plaintiff's libel suit for failure to state a cause of action, holding that "[r]efusing to answer reporters' questions is commonplace and certainly can not reasonably be said to tarnish one's reputation. People in the public eye do it all the time. There is nothing odious or disgraceful about it." *Id.*

Because the statement that Brewer declined to be interviewed would not tend to injure his reputation, thereby exposing him to public hatred, contempt, ridicule, or financial injury, the trial court properly rejected Brewer's claim that the statement was defamatory. Appellants first point as it relates to ABC's comments about profiteering and declining to be interviewed is overruled.

*Admissibility of TDH Records*

█ TDH officials advised ABC during the course of its investigation that the best way to determine the quality of care provided in a particular nursing home was to review the public records and determine what the TDH's surveyors and investigators had reported following past visits to the home. Accordingly, ABC requested and obtained copies of the official TDH records detailing the results of surveys, inspections, and complaint investigations that had been conducted at various nursing homes, including those owned by Brewer, in recent years. Appellants contend in their seventh point that the trial court erred in granting summary judgment because these reports are inadmissible.

ABC relies on Section 19.2011 of the Texas Administrative Code, which sets forth the procedures for inspection of such Department of Human Services ("DHS") public records and provides that "[r]ecords maintained by Long–Term Care–Regulatory *are open to the public,*" so long as names and other personally identifiable data are removed. 40 TEX. ADMIN. CODE § 19.2011(e) (1997). Long–Term Care–Regulatory is defined as the "department in the long-term care division of DHS responsible for surveying nursing facilities to determine compliance with regulations for licensure and certification...." *Id.* § 19.101. Appellants argue that section 19.2011 deals only with the inspection or release of DHS records and not their admissibility. Appellants contend the DHS records relied on by ABC are inadmissible and direct us to section 242.049(e) of the Texas Health and Safety Code, which states

that any DHS *quality improvement records* shall not be admissible in any civil, administrative, or criminal proceeding. *See* TEX. HEALTH & SAFETY CODE ANN. § 242.049(e) (Vernon Supp.1998). We see no conflict, however, between section 19.2011 of the Administrative Code and section 242.049(e) of the Health and Safety Code.

Chapter 242 is entitled "Convalescent and Nursing Homes and Related Institutions," and section 242.049 is entitled "Quality Improvement." Under this section, DHS may gather data on a form to be provided by DHS to improve the quality of care in nursing homes. *Id.* § 242.049(b). This data can "include information compiled from *documents otherwise available under [the Open Records Act]*, including but not limited to *individual survey reports and investigation reports." Id.* (emphasis added). Subsections (d) and (e) state that the collection of the information and any reports produced from it *by DHS for quality improvement* shall be confidential, shall not be subject to any means of legal compulsion, and shall not be admissible in any judicial proceeding. *Id.* § 242.049(d),(e). However,

> [a]ny information, reports, and documents produced which are subject to any means of legal compulsion or which are considered to be public information ... *shall continue to be subject to legal compulsion and treated as public information ... even though* such information, reports, and other documents may be *used in the collection, compilation, and analysis described in Subsections (b) and (d).*

*Id.* § 242.049(i) (emphasis added).

We conclude that the type of records relied on by ABC do not constitute "quality improvement reports,"[5] as defined in section 242.049, but instead constitute inspectors' reports and reports of patient abuse, neither of which are confidential. Inspectors' reports "are to be made available to consumers, service recipients, and the relatives of service recipients as [DHS] considers proper." TEX. HEALTH AND SAFETY CODE § 242.043(h) (Vernon 1992). Reports of patient abuse are not

privileged except in the case of attorney-client communications. *See id.* § 242.129. Thus, notwithstanding section 242.049(e), the inspectors' reports "continue to be subject to legal compulsion," and the patient abuse reports "continue ... to be treated as public information." *See id.* § 242.049(i). Accordingly, their admissibility is not limited by section 242.049(e).

■ Appellants further argue that some of the TDH records introduced by ABC were inadmissible because they contained hearsay statements. However, these documents are excepted from the hearsay rule as authenticated public records. *See* TEX.R. EVID. 803(8). In response to a similar hearsay argument, the Austin Court of Appeals recently held that an inspection report entitled "Statements of Deficiencies and Plans for Corrections" issued by the DHS in evaluating nursing home facilities was admissible where duly certified and authenticated by DHS's custodian of records. *See Sensitive Care, Inc. v. Texas Dept. of Human Servs.,* 926 S.W.2d 823, 826 (Tex.App.—Austin 1996, no writ). Because the reports relied on by ABC were duly authenticated as a public record by DHS's custodian of records, they were properly admitted by the trial court.

■ Additionally, many of the alleged "hearsay within hearsay" statements in the records constitute present sense impressions relating to patients' then existing mental, emotional, or physical conditions or statements made for the purpose of medical diagnosis or treatment. *See* TEX.R. EVID. 803(1),(3), & (4). The records are also admissible to show ABC's state of mind, i.e., to show lack of malice, rather than for the truth of the matter asserted. *See* TEX.R. EVID. 801(d). Appellants' seventh point is overruled.

*Privilege*

■ In their sixth point, appellants complain that the trial court erred in granting summary judgment because ABC failed to show that the statements were privileged.

**5.** These records were compiled from 1988 to 1991. Section 242.049 was not enacted until 1993.

Article 73.002 of the Texas Civil Practice and Remedies Code provides that a news reporter may make "[r]easonable and fair comment on or criticism of an official act of a public official or other matter of public concern published for general information." TEX. CIV. PRAC. & REM.CODE ANN. § 73.002(b)(2) (Vernon 1997). Such commentary is privileged and cannot form the basis of a libel action. *See id.* § 73.002(a) (Vernon 1997); *Traweek v. Radio Brady, Inc.,* 441 S.W.2d 240, 243 (Tex.Civ.App.—Austin 1969, writ ref'd n.r.e.).

Appellants cite *Hornby* for the proposition that because ABC reported facts and not opinions, this privilege does not apply. *Hornby v. Hunter,* 385 S.W.2d 473, 477 (Tex. Civ.App.—Corpus Christi 1964, no writ). However, whether ABC was reporting facts or opinions is not the determinative factor. The question is whether the report was factually consistent with the underlying TDH reports of abuse, neglect, and other violations, which ABC relied on in its motion for summary judgment. *See McIlvain v. Jacobs,* 794 S.W.2d 14, 16 (Tex.1990); *see also Sweeney v. Caller-Times Pub. Co.,* 41 F.Supp. 163, 168 (S.D.Tex.1941) (applying Texas law to find "it is not necessary that the facts be established as true (a perfect defense), before a newspaper publisher can avail himself of the qualified privilege.").

ABC's summary judgment evidence established that between 1989 and 1991, Brewer's facilities were repeatedly cited for violations of TDH's rules and regulations: (1) failure to protect residents from accidents and injuries; (2) failure to notify attending physicians of significant changes in the residents' conditions; (3) failure to provide adequate nursing staff; (4) failure to provide rehabilitative programs to prevent immobility, deformities, and contractures; (5) failure to provide grooming and personal hygiene, and (6) failure to maintain good nutrition. The evidence concerning such occurrences clearly demonstrates that the report was a reasonable and fair comment on the official proceedings of the TDH and of matters which were, undoubtedly, of public concern.

Because ABC and Anderton established that the complained-of statements were privileged under section 73.002(b)(2), we overrule appellants' sixth point.

### Conclusion

Having overruled appellants' points one through nine as they relate to Bates and appellants' points six and seven as they relate to Anderton and ABC, we affirm the summary judgments.[6]

---

6. Our disposition of points six and seven as they relate to Anderton and ABC makes it unnecessary to address appellants' remaining points relating to these defendants.