**Opinion issued July 9, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00442-CV

————————————

### JOHN F. VECCHIO, Appellant

### V.

### RANDALL D. JONES, Appellee

On Appeal from the 151st District Court
Harris County, Texas
Trial Court Case No. 2008-75283

## MEMORANDUM OPINION

This is a defamation suit arising out of a dispute between members of a homeowner's association. In this appeal, we consider whether the trial court properly granted Randall D. Jones's motion for summary judgment on John F.

Vecchio's defamation claims against him. Specifically, we address (1) whether the statements were opinions, (2) substantially true, or (3) made with actual malice. We affirm.

## BACKGROUND

**The Directors of the Huisache Acre's Owners' Association**

Appellant John F. Vecchio and appellee Randall D. Jones are both residents of Huisache Acres subdivision in Houston, Texas. Jones has twice served as a director and president of the Huisache Acres Owners' Association (the HOA)—first from 1991 through 1996, and again from 2000 through 2004. While Jones was president of the HOA, four deed restriction suits were filed against residents. A dispute arose between the HOA and its law firm in these suits over the firm's billing practices. Ultimately, the firm agreed to forfeit its fees in these suits.

In 2004, the HOA held its annual meeting. The presiding director, Eugene Shepherd, informed the membership that the other directors, Henry Sauer and Jones, had resigned earlier in the year, leaving only Shepherd as a director. No one was nominated as a director, and the meeting was adjourned because a quorum was not present. Sometime after the meeting, Shepherd appointed Vecchio and Alex Finney as directors and then resigned himself.

Jones contends that these appointments are in violation of the HOA's Articles of Incorporation and Bylaws. The Bylaws provide that "in the event of the

death, resignation or failure or refusal to serve of any member of the Board of Directors, the remaining Directors shall appoint a Director to serve the unexpired term." However, the Bylaws also provide that:

> Any vacancy occurring in the Board of Directors shall be filled at the next meeting of the Board of Directors following the occurrence of such vacancy, or, if the vacancy occurs while a Director's meeting is in progress, such vacancy shall be filled at the meeting. Such vacancy shall be filled by the affirmative vote of a majority of all of the remaining Directors comprising no less than a quorum . . .

The Bylaws define a "quorum" as a "majority of the Board of Directors." It is Jones's position that Vecchio was never a director because he was not elected or appointed in compliance with these Bylaws. Specifically, Jones contends that a single director cannot appoint the other two directors because a single director cannot constitute a quorum.

Once Shepherd resigned, Vecchio and Finney appointed Vecchio's wife, Lindell Vecchio, as the third director. In 2005, Finney resigned leaving only John Vecchio and Lindell Vecchio as directors.

For the next four years, the Vecchios failed to call an annual meeting of the HOA. Jones contends that this was also a violation of the Bylaws.[1] During this

---

[1]     The Bylaws provide:

> An annual meeting of the Members for the purpose of hearing reports from all officers and standing committees for electing Directors shall be held in Harris County, Texas, in June of each year, beginning and with the year 1991. The time and place shall be fixed by the Directors. At the annual meeting of the Members, the following shall be the order of business: (a) Reading of the minutes of the last

period, the Vecchios sought to collect special assessment to finance lawsuits to enforce the HOA's deed restrictions. Jones contends that these special assessments were also a violation of the Bylaws.[2]

**The *Nazario* Lawsuit**

One of the suits brought by Vecchio, acting as a director of the HOA, was a deed restriction suit against Richardo Nazario,[3] which was based on (1) a basketball goal in the driveway, (2) a yard sign for the Nazarios' school, and (3) a parking pad. In this suit, Nazario filed a Motion to Show Authority, in which he asserted that Vecchio had no authority to bring the suit on behalf of the HOA. At this hearing, Jones testified as follows:

> [Nazario's counsel]: You've heard the allegation that Mr. and Mrs. Nazario made that the Huisache Acres Owners' Association is acting without authority in this case. Is that correct?

---

> annual meeting of the Members; (b) President's report; (c) Secretary's and Treasurer's reports; (d) Election of Directors for the Association for the ensuing year to replace Directors whose terms have expired in accordance with the terms of these Bylaws; (e) Other business that may be properly brought before the meeting.

[2] The Bylaws provide:

> Special assessments may be levied on Members of this Association only by the approval of the majority of the total number of votes entitled to vote on such question. The procedure for voting on proposed assessments shall be the same as the procedure provided in these Bylaws for voting on amendments to these Bylaws [which requires an affirmative vote of the Owners of 60% of the total number of votes entitled to vote].

[3] *Huisache Acres Owners' Ass'n v. Ricardo Nazario*, Cause No. 864,439, County Court at Law Number 4, Harris, County Texas.

4

[Jones]: I've heard that.

[Nazario's counsel]: Do you agree with that?

[Jones]: I do not.

However, when Jones was asked whether he believed that Vecchio had "been duly nominated in accordance with the HOA's bylaws," Jones testified that there was no quorum at the meeting, indicating that Vecchio was not a duly elected representative of the HOA. At the hearing on the Motion to Show Authority, the trial judge recognized that "[i]n some respect it appears that it was always the intent to have a majority of more than one person making these rules [about director appointments]," but found that the bylaws created a loophole in the situation where two of the three directors resigned, leaving a majority and quorum of one. Thus, the trial judge ruled against Nazario on his Motion to Show Authority, indicating that Vecchio's initial appointment was valid despite being made by only one director. However, the trial judge did not address the issue of whether the Board was continuing to operate lawfully in light of its subsequent failure to hold meetings and elections, and in fact stated, "I merely ruled as a matter of law what I—how I'm interpreting the law [regarding appointment of directors]. If the entire thrust of your motion to Show Authority is the Board of Directors is illegally operating because, then I agree with you. I'm ruling against you in this phase [of the trial]."

5

Nazario subsequently filed a Motion for Summary Judgment, which was based in part on the argument that Vecchio did not have standing and authority to bring the suit. The trial court granted Nazario's motion and entered a take nothing judgment against Vecchio. The Final Judgment did not provide reasons for the trial court's ruling.

**The Attempts to Call a Homeowners' Meeting**

In late 2007, some of the Homeowners, along with Jones, attempted to convene a homeowner's meeting. In connection with this initial effort to call a meeting, Jones drafted a letter to neighbors dated October 23, 2007, in which he sought their vote for a special meeting. The letter contains several statements that Vecchio claims are defamatory, including the following:

> Mr. Vecchio, however, unilaterally deemed himself a Director, although he was never duly elected by a majority vote of a quorum of the Huisache Acres Owners. He also appointed his wife as a Director and they have violated our Huisache Acres Deed Restrictions by acting as duly elected representatives of Huisache Acres and suing Owners. More importantly, Mr. Vecchio has subsequently sued other homeowners for questionable violations. As a result of his acts, he has been spending your dues on reckless lawsuits which need to be stopped now.
> . . . .
> On October 9th, 2007 the judge in the Nazarios suit affirmed she would sign a Summary Judgment in favor of the Nazarios. Her reasoning for signing the Summary Judgment was; she felt the suit had no merit under current Texas law and because she had serious doubt that Mr. Vecchio was a legitimate or properly elected Director of Huisache Acres.

6

The initial efforts to call a homeowner's meeting were postponed when one of the director candidates withdrew his name from consideration.

In 2008, efforts were renewed to call a special homeowner's meeting. At some point prior to December 6, 2008, Jones circulated a "Huisache Acres Subdivision Notice," indicating that a special meeting of the homeowners would take place in January 2009. The notice indicated that the purpose of the special meeting was to

> Resolve the most important threat to Huisache Acres since its reformation to allow its "Original Lots" to be subdivided in 1991 to encourage new home construction being to formally bar Mr. John Vecchio (5070 Fieldwood) from continuing to hold himself out as an elected Director. Mr. Vecchio isn't an elected Director, but has held himself out as one & subsequently sued other owners for questionable violations, and as a result of his acts, he has been spending your dues/assessments on questionable lawsuits which need to be stopped.

Vecchio responded by email to Jones, alleging that "your written Notice to homeowners includes several false and defamatory statements concerning my activities as Director," and demanding a retraction and apology.

On December 7, 2008, Jones responded by email, copying several other homeowners in Huisache Acres. In his email, Jones stated that "it wasn't my intention to defame you, but to only state the facts from court documents." Jones stated that he had also circulated (1) Shepard's affidavit filed in the *Nazario* suit; (2) "the Judge's comments in the Final Order dismissing the [Nazario] Case . . . wherein the Judge seriously questioned your standing in the litigation as a Director

7

and the ability to spend Huisache funds;" and (3) the mandate dismissing the appeal of the *Nazario* case.

After again receiving a demand for a retraction from Vecchio, Jones responded by email, with copies to other homeowners, stating:

> As you may know, Huisache Acres hasn't had a subdivision meeting since 2002 or 2003; however, one was held in 2004 in an attempt to elect Directors. Unfortunately, a quorum wasn't present and therefore no legal subdivision business could be conducted nor Directors elected. Since it takes two Directors to appoint a Director to fill a vacancy, the sole remaining Director at [sic] also resigned at that 2004 meeting.

Vecchio responded by filing a suit against Jones and the three director candidates seeking to enjoin them from holding any homeowner's meeting, including the planned January 10, 2009 meeting, and from "using proxy votes gathered illegally." This suit was subsequently non-suited.

On December 15, 2008, Jones again emailed Vecchio explaining why he questioned Vecchio's authority as a director to levy or collect special assessments. Jones attached the relevant Bylaws upon which he based his opinion, and several other homeowners sent basically identical emails.

On December 23, 2008, Vecchio sued Jones in the present action alleging defamation based on several of the communications detailed herein.

8

**The HOA Election**

On December 29, 2008, Lindell Vecchio emailed all the homeowners advising them that a special meeting would be held at Vecchio's office on January 10, 2009. A proxy ballot with both John Vecchio's and Lindell Vecchio's names was attached. The email also told homeowners that "all proxies signed under the direction of nonmember, Randy Jones . . . are void."

On December 30, 2008, John and Lindell Vecchio again emailed all homeowners of the HOA submitting their name as candidates for director positions and touting their qualifications. That same day, the Vecchios sent another email explaining that 46 homeowners had opted to pay a special assessment, while 17 had not.

On December 31, 2008, Vecchio again emailed homeowners accusing Jones of hiring a law firm when he was President of the HOA that "dissolved and pled guilty of criminal acts." Vecchio stated that a relative of Jones worked at the law firm and that the firm had "bilking our association for years for thousands of dollars until I investigated them."

On January 2, 2009, Jones paid $200 for his HOA dues and $200 for the special assessment so that he would not be denied the right to vote in the January 10 meeting. In his email of the same date, Jones stated:

> This is being delivered today at your residence. Enclosed is my check for $200.00 which is for the assessment so that no objection to my

ability to vote in the upcoming meeting or my Good Standing Status can be made by anyone. Also, enclosed is a copy of the front and back of my check written in January 2008, which you cashed, representing my 06 and 07 dues. This $200 assessment check is written under protest because I believe assessment[s] like this require 60% of the Huisache Acres owners approval to be a valid assessment.

On January 4, 2009, the homeowners received an email from Lindell Vecchio's email address entitled "Who is Randy Jones?" The email stated:

It is way past time for Jones's dirty deeds to stop. Neighbors are confused, worried and even afraid. He has carelessly aligned himself with one criminal element in this neighborhood. Five different female residents on both our streets are in fear of this unsavory, hostile character. Neither Mr. Jones's gossip, nor his association with criminal, become him. Furthermore, a neighborhood entrenched in foul accusations, cruel insults, downright lies and serious threats of violence is an unhappy, unhealthy place indeed. . . . Could it be Mr. Jones is just bored because he is "often in between jobs" and home alone? . . . Or, is he desperate and lonely, when he calls and insults neighbors at inappropriate hours of the morning and evening. . . . Perhaps Randy is merely playing a game for his own amusement but defamation is serious and illegal and he should not have done it. He did do it, nonetheless, he will face my husband in a court of law to answer for it.

On January 7, 2009, Vecchio, by email, acknowledged receipt of Jones's $200 and replied, stating, "If you feel you are capable of behaving yourself and complying with the Bylaws, please come and vote in person or, if you cannot, vote by proxy."

On January 10, 2009, the HOA special meeting was held at Vecchio's office. Jones claims that he was barred from attending by security officers hired by Vecchio. Vecchio claimed that because none of the candidates received a majority

10

of the votes, he and three others agreed to be appointed the new directors. Jones, however, presented evidence that Vecchio was defeated in the election, but threatened to sue the HOA to invalidate the election if he was not given a position. Nevertheless, Vecchio later resigned, but continued to prosecute this suit.

**The Present Suit**

On July 29, 2009, Vecchio joined Nazario as a defendant in Vecchio's defamation suit against Jones, asserting that Nazario, too, published many of the statements attributed to Jones, plus several others. Jones moved for summary judgment, and on January 21, 2010, the trial court granted summary judgment as to five of the eight statements Vecchio alleged were defamatory. Nazario filed a motion for summary judgment, which the trial court granted in whole on July 21, 2010. In its order granting Nazario's summary judgment, the trial court specifically found that several of the statements complained of, many of which are the same statements attributed to Jones, were either opinion, substantially true, or made under a qualified privilege. The trial court further found that none of the statements were made with actual malice. On that same date, the trial court reconsidered and granted Jones's Motion for Summary Judgment on the three statements that remained pending in the suit against him. Vecchio's claims against Nazario were severed and a take-nothing Final Judgment was signed on Vecchio's claims against Jones. This appeal followed.

11

## PROPRIETY OF SUMMARY JUDGMENT FOR JONES

In his first issue, Vecchio argues that the trial court erred by granting Jones's motion for summary judgment. The statements he complains of are listed in the following paragraphs. We have grouped them according to topic for purposes of this opinion.

### *The Statements Regarding Vecchio's Status and Actions as a Director*

1.    "Resolve the most important threat to Huisache Acres since its reformation to all its 'original lots' to be subdivided in 1991 to encourage new home construction being to formally bar Mr. Vecchio (5070 Fieldwood) from continuing to hold himself out as an elected director. Mr. Vecchio isn't an elected director, but has held himself out as one . . ."

2.    "As a result of his acts, he has been spending your dues on reckless lawsuits which need to be stopped now."

3.    "Mr. Vecchio, however, unilaterally deemed himself a Director, although he was never duly elected by a majority vote of a quorum of the Huisache Acres Owners. He also appointed his wife as a Director and they have violated our Huisache Acres Deed Restrictions by acting as duly elected representatives of Huisache Acres . . ."

4.    Vecchio "subsequently sued other owners for questionable violations and as a result of his acts, he has been spending your dues/assessments on questionable lawsuits which need to be stopped."

### *Statements Regarding the Nazario Lawsuit*

5.    "On October 9th, 2007, the judge in the Nazarios suit affirmed she would sign a Summary Judgment in favor of the Nazarios. Her reasoning for signing the Summary Judgment was; she felt the suit had no merit under current Texas law . . ."

12

6.    "The Judge's comments in the Final Order dismissing the Nazario case was [sic] shared with the Owners wherein the Judge seriously questioned your standing in the litigation as a Director and the ability to spend Huisache funds."

7.    "She [the judge in the Nazario suit] had serious doubts that Mr. Vecchio was a legitimate or properly elected Director of Huisache Acres."

### Statements Regarding Jones's Check for Dues

8.    "Also, enclosed is a copy of the front and back of my check written in January 2008, which you cashed, representing my 06 and 07 dues."

## A. Summary Judgment Standard of Review in Defamation Suit

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). A defendant who conclusively negates, as a matter of law, at least one essential element of a cause of action is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010); *Brewer v. Capital Cities/ABC, Inc.*, 986 S.W.2d 636, 641 (Tex. App.—Fort Worth 1998, no pet.); *see* TEX. R. CIV. P. 166a(b), (c). Thus, to be entitled to summary judgment, a defendant in a defamation suit has the negative burden to prove the absence of one of the essential elements of defamation, e.g., that the statement complained of was not defamatory. *Ramos v. Henry C. Beck Co.,* 711 S.W.2d 331, 333–34 (Tex. App.—Dallas 1986, no writ).

13

## B. The General Law Concerning Defamation

"Defamation" is generally defined as the invasion of a person's interest in his or her reputation and good name. PROSSER & KEETON ON TORTS § 111, at 771 (5th ed. 1984 & Supp. 1988). "Defamation" encompasses both libel and slander. By statute, Texas law defines "libel" as a defamation expressed in written or other graphic form that tends to injure a living person's reputation and thereby expose the person to public hatred, contempt, ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation or to publish the natural defects of anyone and thereby expose the person to public hatred, ridicule, or financial injury. TEX. CIV. PRAC. & REM. CODE ANN. § 73.001 (Vernon 2011).

To prevail on a defamation cause of action, the plaintiff must prove that the defendant (1) published a statement, (2) that was defamatory concerning the plaintiff, (3) while acting with actual malice regarding the truth of the statement where the plaintiff was a limited purpose public figure.[4] *See WFAA–TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998); *Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 574 (Tex. App.—Austin 2007, pet. denied).

Whether a statement is capable of a defamatory meaning is a question of law. *See Fort Worth Star–Telegram v. Street*, 61 S.W.3d 704, 708 (Tex. App.—

---

[4] The trial court found that Vecchio was a limited purpose public figure, and Vecchio does not challenge that finding on appeal.

14

Fort Worth 2001, pet. denied) (citing *Musser v. Smith Protective Servs., Inc.,* 723 S.W.2d 653, 655 (Tex. 1987)). We must view the statements alleged to be defamatory as a whole and in light of the surrounding circumstances; the determination is based upon how a person of ordinary intelligence would perceive the entire statement. *Ezrailson v. Rohrich*, 65 S.W.3d 373, 376 (Tex. App.—Beaumont 2001, no pet.). Statements alleged to be defamatory must be viewed in their context; they may be false, abusive, unpleasant, or objectionable to the plaintiff and still not be defamatory in light of the surrounding circumstances. *Id.* We must consider the entire communication, not mere isolated sentences or portions. *Musser,* 723 S.W.2d at 655.

## C.  Opinion

Purely subjective assertions or opinions that do not imply the existence of undisclosed facts and do not misconstrue the facts are not actionable as defamation. *See Bentley v. Bunton,* 94 S.W.3d 561, 583–84 (Tex. 2002); *see also Carr v. Brasher,* 776 S.W.2d 567, 570 (Tex. 1989) (explaining that "[a]ll assertions of opinion are protected by the first amendment of the United States Constitution and article I, section 8 of the Texas Constitution"). This is particularly so when the facts underlying an opinion are set out in the publication itself, thereby allowing the listener to evaluate the facts and either accept or reject the opinion. *Brewer,* 986 S.W.2d at 643. Instead, to be actionable as defamation, a statement

15

must be an assertion of verifiable fact, that is, a statement that purports to be verifiable. *Bentley,* 94 S.W.3d at 583–84.

The determination of whether a publication is an actionable statement of fact or a constitutionally protected statement of opinion, like the determination whether a statement is false and defamatory, is a question of law. *Bentley,* 94 S.W.3d at 580; *see also Turner v. KTRK, Television, Inc.*, 38 S.W.3d 103, 114 (Tex. 2000). And, like the determination whether a publication is false and defamatory, the determination whether a publication is an actionable statement of fact or a protected expression of opinion depends upon a reasonable person's perception of the entirely of the publication. *Bentley,* 94 S.W.3d at 579.

Statements 1 through 4 listed above are all statements reflecting Jones's opinion that Vecchio was not properly appointed or elected according to Huisache Acres' Bylaws. Specifically, Jones considered Vecchio "a threat" to the HOA because he "[held] himself out as an elected director," brought "reckless" lawsuits, "deemed" himself a director though never "duly elected," and brought suits for "questionable" HOA violations.

In *Falk & Mayfield LLP v. Molzan*, 974 S.W.2d 821, 822-23 (Tex. App.—Houston [14th Dist.] 1998, pet. denied), the defendant placed a sign in from of his place of business stating, "Ask me about lawsuit abuse & the Law Firm of Falk & Mayfield." *Id.* at 822. The law firm referenced in the sign filed a suit for

16

defamation against the defendant. *Id.* The court of appeals held that, although the term "lawsuit abuse" is an accusation of legally manipulating the civil justice system to gain an unfair advantage, it was "an individual judgment that rests solely in the eye of the beholder" and was "an expression of opinion which is absolutely protected." *Id.* at 824.

Despite Vecchio's claims that Jones's statements amounted to accusations of barratry, we hold that the statements by Jones that Vecchio was a "threat" and brought "reckless lawsuits" for "questionable" HOA violations to be, like the term "lawsuit abuse" in *Falk,* nothing more than Jones's opinions, thus not actionable. *See also Tomlinson v. McComas,* No. 02–11–00175–CV, 2011 WL 5607604, at *8 (Tex. App.—Fort Worth Nov. 17, 2011, pet. denied) (holding that statements regarding how president of homeowners' association presided over matters constituted opinions that were not actionable for defamation).

And regarding Jones's assertions that Vecchio had never been "duly elected," we note that Jones provided the other homeowners with underlying facts so that they could form their own opinions. *See Brewer,* 986 S.W.2d at 643 (holding that statement accusing plaintiff of "profiteering" was opinion, thus not actionable, "particularly so when the facts underlying an opinion are set out in the publication itself, thereby allowing the listener to evaluate the facts and either accept or reject the opinion.") Here, Jones referred to provisions of the HOA

17

bylaws to support his opinion, and also referenced and attached an affidavit that was filed by Shepherd in the *Nazario* suit as support for his assertion. As homeowners, the recipients of Jones's communications had access to the HOA bylaws and could read them to determine whether or not they agreed with Jones's opinion as to whether Vecchio was "duly elected."

Therefore, we hold that statements 1-4 are statements of Jones's opinion are not actionable.

### D. Substantial Truth

Truth is a defense to defamation. *Klentzman v. Brady*, 312 S.W.3d 886, 898 (Tex. App.—Houston [1st Dist.] 2009, no pet.) A showing of substantial truth of defamatory words likewise will defeat a defamation cause of action. *McIlvain v. Jacobs,* 794 S.W.2d 14, 15–16 (Tex. 1990); *Gustafson v. City of Austin*, 110 S.W.3d 652, 656 (Tex. App.—Austin 2003, pet. denied) ("The defense of truth does not require proof that the alleged defamatory statement is literally true in every detail; substantial truth is sufficient."). The test of substantial truth is "whether the alleged defamatory statement was more damaging to [plaintiff's] reputation, in the mind of the average listener, than a truthful statement would have been." *McIlvain*, 794 S.W.2d at 16; *see Turner*, 38 S.W.3d at 115 (noting substantial truth doctrine "precludes liability for a publication that correctly conveys a story's 'gist' or 'sting' although erring in the details"); *Langston v.*

18

*Eagle Printing Co.*, 797 S.W.2d 66, 69–70 (Tex. App.—Waco 1990, writ ref'd n.r.e.) (concluding statement is substantially true even if it greatly exaggerates plaintiff's misconduct, as long as the average reader would not attach any more opprobrium to the plaintiff's conduct merely because of the exaggeration). In making the determination as to substantial truth, we look to the "gist" of the statement alleged to be defamatory. *See McIlvain,* 794 S.W.2d at 16.

Statements 5 through 7 listed above are all statements regarding the proceedings in the *Nazario* lawsuit and all are either true or substantially true. The statement that the trial judge "would sign a Summary Judgment in favor of the Nazarios" because "she felt the suit had no merit under current Texas law" is true. The trial court did, in fact, sign a Summary Judgment in favor of Nazario, which necessarily indicated its belief that the suit against the Nazario was without merit.

And, while it is true that the "Final Order" granting the summary judgment did not give Vecchio's lack of standing as a reason, the Motion for Summary Judgment, which was subsequently granted, was based, at least in part, on an allegation that Vecchio lacked standing to bring the suit. Thus, even though statement 6 is not technically true in all respects because the trial court did not "seriously question" Vecchio's standing *in the "Final Order,"* the statement is substantially true because his standing was challenged in the Motion giving rise to the "Final Order."

19

And, the record in the *Nazario* suit supports the substantial truth of statement 7. At the hearing on Nazario's Motion to Show Authority, the trial court did "seriously question" Vecchio's standing to bring the suit. Although she ruled in Vecchio's favor "in [that] phase [of the trial]," she stated on the record, "If the entire thrust of your motion to Show Authority is the Board of Directors is illegally operating because, then I agree with you." The trial court then subsequently granted Nazario's summary judgment, which was based in part, on the argument that Vecchio lacked standing to prosecute the suit.

Therefore, we hold that statements 5-7 regarding the *Nazario* lawsuit are all either true or substantially true, thus not actionable.

Statement 8 regarding Jones's check for his dues is also substantially true. Vecchio argues that when Jones stated that Vecchio "cashed" the check, he was accusing Vecchio of theft by individually cashing the check and pocketing the money. Viewing the statement as a whole and in light of the surrounding circumstances, as we must, *see Ezrailson*, 65 S.W.3d at 376, we conclude that no person of ordinary intelligence would perceive the entire statement as an allegation of theft. Jones's statement in its entirety provides:

> This is being delivered today at your residence. Enclosed is my check for $200.00 which is for the assessment so that no objection to my ability to vote in the upcoming meeting or my Good Standing Status can be made by anyone. *Also, enclosed is a copy of the front and back of my check written in January 2008, which you cashed, representing my 06 and 07 dues.* This $200 assessment check is

20

> written under protest because I believe assessment like this require 60% of the Huisache Acres owners approval to be a valid assessment.

The "gist" of Jones's statement was to express his concern that he would not be allowed to vote in the upcoming election so he was (1) paying a "special assessment" under protest, and (2) pointing out that he had already paid his '06 and '07 dues and that the check had been cashed. Although it may have been more accurate to say that Vecchio had accepted the check and endorsed it for deposit in the HOA's account, Jones's statement that Vecchio "cashed" the check is substantially true and, in context, does not imply any misdeed by Vecchio.

Therefore, we hold that statement 8 is substantially true, thus not actionable.

### E. Actual Malice

To establish a defamation claim, a limited purpose public figure must show that the defendant published the allegedly defamatory statements with actual malice. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342, 94 S. Ct. 2997, 3008 (1974); *McLemore*, 978 S.W.2d at 571. A defendant may prevail on his motion for summary judgment by offering evidence negating the actual malice element as a matter of law. *See Hearst Corp. v. Skeen*, 159 S.W.3d 633, 637 (Tex. 2005); *Huckabee v. Time Warner Entm't Co. L.P.*, 19 S.W.3d 413, 420 (Tex. 2000). Once the defendant meets this burden, then the plaintiff must present evidence raising a genuine issue of material fact regarding actual malice to avoid summary judgment. *Huckabee*, 19 S.W.3d at 420.

21

The actual malice standard serves to protect innocent, but erroneous, speech on public issues, while deterring "calculated falsehoods." *Turner*, 38 S.W.3d at 120. A showing of "actual malice" in a defamation suit requires proof that the defendant made a statement with knowledge that it was false or with reckless disregard of whether it was true or false. *New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 162 (Tex. 2004); *Huckabee*, 19 S.W.3d at 420. In this context, actual malice refers to the defendant's attitude toward the truth of what he said, *McLemore*, 978 S.W.2d at 573, and means that the defendant made the statement knowing that it was false or with reckless disregard about whether the statement was false or not. *HBO v. Harrison,* 983 S.W.2d 31, 36 (Tex. App.—Houston [14th Dist.] 1998, no pet.).

Reckless disregard is a subjective standard, focusing on the defendant's state of mind. *Isaacks*, 146 S.W.3d at 162; *Bentley*, 94 S.W.3d at 591. Specifically, the plaintiff must establish that the defendant in fact entertained serious doubts as to the truth of his publication, or had a high degree of awareness of the probable falsity of the published information. *Isaacks*, 146 S.W.3d at 162 (citing *Bentley*, 94 S.W.3d at 591) (internal quotations omitted).

Thus, we look to the record to determine whether Jones has negated actual malice, thus shifting the burden to Vecchio. In *Casso v. Brand,* 776 S.W.2d 551, 559 (Tex. 1989), the court considered the adequacy of Casso's evidence negating

actual malice and concluded some of Casso's summary judgment proof was sufficient to negate actual malice, and some of it was not. *Id.* When Casso testified "he did not believe the allegations were false and did not act with reckless disregard as to their truth or falsity in repeating those allegations," summary judgment was proper. *Id.* When Casso's proof provided "no information as to Casso's knowledge that the statements were not false or were not made with reckless disregard to their truth or falsity," it was not sufficient. *Id.* In *Huckabee,* the supreme court further explained that to negate actual malice, an affidavit from an interested witness "must establish the defendant's belief in the challenged statements' truth and provide a plausible basis for this belief." *Huckabee,* 19 S.W.3d at 424.

Jones attached an affidavit to his motion for summary judgment. In his affidavit, Jones asserts

> I have not made any statements about Mr. Vecchio which were defamatory and did not intend to do so. While I have disagreed with his views and statements, I feel that I have the right as a homeowner to develop any individual views regarding HOA matters and to express my opinion regarding matters affecting the neighborhood.

As such, Jones has presented evidence that his statements were his opinions made in the context of an HOA dispute and were not intended to defame Vecchio. Jones's affidavit further gave the basis of his opinions regarding legitimacy of Vecchio's position on the HOA board when he averred as follows:

23

I have relied upon Mr. Shepherd's Affidavit in the Nazario case in forming my opinions and my state of mind on the issue and expressing those opinions to homeowners concerning the lack of authority of Vecchio to serve as Director, to proceed with questionable lawsuits and to collect special assessments in violation of HOA's Bylaws and Deed Restrictions.

Jones also swore that

my opinion that Vecchio, sitting as a Director, was a "threat" was just than—an opinion held, without malice, based in part on the following facts: (i) Vecchio had failed to call a homeowners' meeting in four years, in violation of the Bylaws, which required an annual homeowners' meeting, (ii) the Vecchio board, led by Vecchio and his spouse, Lindell Vecchio, had undertaken efforts to unilaterally levy and collect special assessments from the homeowners to finance lawsuits, and (iii) at least one lawsuit involved questionable violations . . . and the other an alleged immaterial violation, and (iv) the levy of special assessments to finance lawsuits, unless the suits involved serious violations and were absolutely necessary, was unwise in my view.

Finally, Jones's affidavit also alleged as follows:

In any event, none of my comments in the email were defamatory, or meant to injure Vecchio, but rather to explain my view and position of matters that affected HOA in the context of the upcoming Board election. I explained my position and held my opinions in good faith, and nothing in the December 7, 2008 [email] is defamatory.

With this affidavit, Jones reaffirmed his belief in the truth of his assertions, provided the factual basis for his beliefs, and denied any belief that the statements were defamatory or made with malice toward Vecchio. This affidavit was sufficient to shift the burden to Vecchio to raise a fact issue as to actual malice. Vecchio was required "to offer specific, affirmative proof" to show Jones "either

24

knew the publication was false or entertained serious doubts as to its truth." *HBO*, 983 S.W.2d at 42.

As proof that Jones knew his allegations regarding whether Vecchio had been properly elected to the Board were false, Vecchio pointed to the following testimony by Jones during the *Nazario* proceeding.

> [Nazario's counsel]: You've heard the allegation that Mr. and Mrs. Nazario made that the Huisache Acres Owners' Association is acting without authority in this case. Is that correct?
>
> [Jones]: I've heard that.
>
> [Nazario's counsel]: Do you agree with that?
>
> [Jones]: I do not.

However, when Jones was asked whether he believed that Vecchio had "been duly nominated in accordance with the HOA's bylaws," Jones testified that there was no quorum at the meeting, indicating that Vecchio was not a duly elected representative of the HOA. Taking Jones's testimony at the *Nazario* hearing as a whole, it is clear that he was of the opinion that no business, including Vecchio's appointment as director, had been properly conducted because no quorum of directors was present. As such, Jones's testimony at the *Nazario* hearing does not raise a fact issue regarding whether he believed his allegations regarding Vecchio's authority as a director were false or made with reckless disregard. Jones's opinion

regarding the necessity of a quorum and his interpretation of such based on the bylaws has remained constant, even during the *Nazario* proceeding.

Vecchio also points to evidence that Jones harbored him ill will as evidence of actual malice. Vecchio argues that, "hostile toward Vecchio and his profession, resentful about his loss of control of the subdivision and his membership suspension, Jones was motivated by revenge." Vecchio also points to evidence that Jones was angry at him because Vecchio's investigation revealed that, while serving as HOA president, Jones allowed a law firm hired by him to overcharge the HOA. Vecchio also alleges that Jones "was angry after the association election meeting and the legitimate appointment of new directors, including Nazario and Vecchio."

While all of this may be evidence of "anger" or "ill will" towards Vecchio, it is not evidence of actual malice. "Actual malice" in the defamation context is a term of art. *Id.* Unlike common-law malice, it does not include ill will, spite, or evil motive. *Id.* Rather, to establish actual malice, a plaintiff must prove that the defendant made the statement "with knowledge that it was false or with reckless disregard of whether it was true or not." *New York Times Co. v. Sullivan,* 376 U.S. 254, 279–80, 84 S. Ct. 710, 727 (1964); *Huckabee,* 19 S.W.3d at 420. "Reckless disregard" is also a term of art. *Huckabee,* 19 S.W.3d at 420. To establish reckless disregard, a public official or public figure must prove that the publisher

26

"entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson,* 390 U.S. 727, 731, 88 S. Ct. 1323, 1326 (1968); *Huckabee,* 19 S.W.3d at 420. "Actual malice concerns the defendant's attitude toward the truth, not toward the plaintiff." *Isaacks*, 146 S.W.3d at 165.

While there may be evidence of animosity between Jones and Vecchio, Vecchio presented no evidence that Jones entertained serious doubts as to the truth of his publications. The only evidence shows that Jones believed, and indeed continues to believe, the truth of his statements. And, indeed, this Court has already held that all of the statements were either protected opinion or substantially true.

Because Jones negated the element of actual malice in his summary judgment proof, and Vecchio's summary judgment evidence did not raise a fact issue regarding actual malice, the trial court properly granted summary judgment as to all eight of the asserted defamatory statements.

We overrule Vecchio's first issue on appeal.

**REFUSAL TO RULE ON OBJECTIONS TO JONES'S AFFIDAVIT**

In his second issue on appeal, Vecchio contends the trial court erred in refusing to rule on his objections to Jones's affidavit in support of his motion for summary judgment. On November 6, 2009, Jones filed his "Motion for Partial Summary Judgment and Response to Plaintiff's Motion for Partial Summary

Judgment." On that same day, Jones filed an affidavit in support of his motion. On December 7, 2009, Vecchio filed a response to Jones's motion and objections to Jones's affidavit, with a proposed order and a letter requesting a ruling. On January 21, 2010, the trial court denied Vecchio's summary judgment, and granted, in part, Jones's motion for summary judgment. On July 21, 2010, the trial court reconsidered its order denying part of Jones's motion for summary judgment, and amended its ruling, granting the entire motion. On December 30, 2010, almost a year after the trial court's first ruling on Jones's motion for summary judgment and six month after its amended ruling, Vecchio sent the court a letter requesting a ruling on his objections to Jones' affidavit.

On January 27, 2012, Vecchio received a notice of intent to dismiss. On February 10, 2012, Vecchio filed objections to the court's failure to rule on his objections to Jones's affidavit. He included a letter requesting a ruling, setting a submission date, and a proposed order. On February 16, 2012, Vecchio filed a motion to retain, including a request for a ruling on his objections. On February 20, 2012, the trial court signed the final judgment. On March 16, 2012, Vecchio filed a motion for new trial, in which he reurged his objections to Jones's affidavit.

A trial court is not required to reduce its rulings on summary judgment evidence to writing if it is not timely requested to do so. *See Crocker v. Paulyn's Nursing Home, Inc.*, 95 S.W.3d 416, 421 (Tex. App.—Dallas 2002, no pet.) "It is

28

incumbent upon the party asserting objections to obtain a written ruling at, before, or very near the time the trial court rules on the motion for summary judgment or risk waiver." *Dolcefino*, 19 S.W.3d at 926 (citing TEX. R. APP. P. 33.1(a)).

Here, Vecchio did not object to the trial court's failure to make a written ruling on his objections to summary judgment evidence until almost one year after the trial court's initial ruling and six months after its amended ruling. As such, issue two is waived. *See Dolcefino*, 19 S.W.3d at 926; TEX. R. APP. P. 33.1(a).

We overrule issue two.

## CONCLUSION

We affirm the trial court's judgment.

We deny Jones's request for sanctions.


                                                Sherry Radack
                                                Chief Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.